Commonwealth v. Hazelwood.

CASE 87.—INDICTMENT—JANUARY 8.

# Commonwealth v. Hazelwood.

APPEAL FROM WOODFORD CIRCUIT COURT.

UNDER THE LAW OF THIS STATE A DOG IS PROPERTY, AND, THEREFORE, THE SUBJECT OF LARCENY, the ancient common law rule having, in effect, been abrogated by statute in Kentucky, and this was true even prior to the act of the Legislature of May 17, 1886.

P. W. HARDIN, ATTORNEY GENERAL, FOR APPELLANT.

In every place where our statutes mention dogs, the fact that they are owned and are property is a central idea. They are, therefore, clearly the subject of larceny. (Supplement to Revised Statutes, page 189; General Statutes, page 179; 1 Parker (N. Y.), 593; 4 Parker (N. Y.), 386.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

The only question presented by this appeal is, whether, under the laws of this State, a dog can be the subject of larceny. Undoubtedly, the rule was otherwise at common law. By it, larceny could be committed of such domestic animals as cattle and sheep, and of domestic fowls as hens and ducks, because they serve for food, and were, as Lord Hale says, "under propriety." This was true also as to beasts or birds, *feræ naturæ*, when made tame, if they served for food; such as deer and pheasants, provided the thief knew them to have been reclaimed. Larceny, however, could not be committed of some things in which the owner even had a lawful property, and for an injury to which he could maintain trespass, as mastiffs and spaniels, by reason, as the common law writers said, of the baseness of their nature; nor of some animals, wild by nature, but rendered domestic, as foxes

and bears, because they served for pleasure and not for food.

Blackstone says: "As to those animals which do not serve for food, and which, therefore, the law holds to have no intrinsic value, as dogs of all sorts, and other creatures kept for whim and pleasure, though a man may have a base property therein, and maintain a civil action for the loss of them, yet they are not of such estimation as that the crime of stealing them amounts to larceny." (4 Bl. Com., 236.)

Coke, Hale and the other common law writers are to the same effect.

It seems difficult to give a sound reason for the old rule, in view of the indisputable fact that many dogs are esteemed of great value, and justly so considered. It was adopted, however, when, following the Draconian law, grand larceny was punishable with death; and upon the ground, perhaps, that a dog could have no determinate value. This, however, in this day is not true; nor is it now necessary, in order to save the life of a man, to hold that a dog is of so base a nature that he can not be the subject of larceny. Property is clothed with value by the laws of society and public opinion. In a state of nature, property does not exist. What one then retains and uses depends upon his power. When, however, he enters into society, objects become property, because they are impressed by its usages with certain qualities, among which is the right of the owner to their exclusive use, and the power to dispose of them. If it be true, that whether an object be property depends upon the usage or notion of society, then surely it has impressed upon the dog all the attributes

of property.   The master is entitled to the exclusive
use, and vested with an absolute power of disposition;
while the present public estimate of this faithful and
useful animal, coupled with the recognition of him as
property in various ways by our statutory law, forbids
the assumption that he can not be the subject of lar-
ceny, because of a supposed base nature.   If it be the
object of the criminal law to protect the citizen in that
which is useful and valuable, as well as to punish one
who for *lucri causa* feloniously takes it from him, then
we fail to see any sound reason why this animal, so
varied in its species, and so valuable and useful to man,
should not be protected by the law.   It is domestic in
its nature; it guards the property of its master; it
serves as a companion; it assists the drover in the man-
agement of his stock; and renders itself useful by way
of amusement, service and protection.   We should be
slow, however, to dissent from the ancient common law
rule, so long established, and so universally concurred
in by common law writers, in the absence of statutory
abrogation of it.   Our statute provides for the punish-
ment of "persons guilty of the larceny of goods and
chattels."   *   *   *   (General Statutes, chap. 29, art.
11, sec. 1.)

The term "chattel" is a broad one.   Bouvier, in his
law dictionary, says that "a chattel is a term including
all kinds of property except the freehold and things
which are parcel of it."

The question now arises whether our law so far recog-
nizes a dog as property as to bring him within the
meaning of this term.   If so, then he may be the sub-
ject of larceny.   By an act of our Legislature of Janu-

ary 31, 1865, dogs were made liable to assessment and taxation ; the tax arising therefrom not to be expended in paying for sheep killed by them or injuries done by them, but to become a part of the common school fund. (Myers' Supplement, p. 189.) The form of tax-book given in the General Statutes provides for their assessment. (General Statutes, chap. 92, art. 4, sec. 1.) It seems to us that the imposition of a tax on them necessarily recognizes them as property ; otherwise the law taxes them, and yet fails to recognize the right of ownership.

In 2 Wharton's Crim. Law, sec. 1755, it is said: "As to all other animals which do not serve for food, such as dogs and ferrets, though tame and salable, or other creatures kept for whim and pleasure, stealing these does not amount to larceny at common law. *It is otherwise, however, when they are taxed.*"

Our statute makes a man liable for damage done by his dog, thus recognizing that a dog has an owner, and that the thing owned is property. It expressly speaks of "*the owner*," and provides how, under certain circumstances, he may be deprived of him. For every civil purpose not only our statutes, but the decisions of our courts, recognize a dog as property. The owner may sue in trespass for an injury to him, or bring replevin or trover for his conversion; and no stronger reasons exist for holding, as has been done, that canary birds, or tame pigeons, or bees may be the subject of larceny, than those relating to dogs. These views are supported by the cases of The People v. Maloney, 1 Parker's Crim. Cases, 593 ; The State v. Brown, 9 Baxter, 53 ; and The People v. Campbell, 4 Parker's Crim. Cases, 386.

Before one can be convicted of stealing a dog the value must be shown. It can not well be urged that there is danger of persons being confined in the penitentiary for stealing "mongrel whelps of low degree," because, under our statute, before one can be so punished, it must be proven that the stolen property was worth ten dollars or over.

We have not reached the conclusion above indicated in forgetfulness of the act of the last Legislature, approved May 17, 1886, providing that upon the listing of a dog with the county clerk, and the payment of the taxes therein provided, he should, for one year from that time, be considered personal property for all purposes as fully as any other kind of personal property; but, in our opinion, he was already personal property under our law, and the ancient common law rule had in effect been abrogated.

Judgment reversed, with directions to overrule the demurrer to the indictment, and for further proceedings consistent with this opinion.