In re HABEAS CORPUS OF P. C. BURKELL.

(Third Division.   Fairbanks.   August 10, 1903.)

No. 64.

1. HABEAS CORPUS.

Habeas corpus will not lie to discharge a prisoner convicted of crime where the court had jurisdiction and the record discloses mere errors.

[Ed. Note.—For cases in point, see vol. 25, Cent. Dig. Habeas Corpus, §§ 4, 25.]

2. HABEAS CORPUS—CRIMINAL LAW—SENTENCE.

Where a justice of the peace added "at hard labor" to a penalty of confinement in the county jail, habeas corpus will not lie to cure the error where hard labor is not in fact being imposed as a part of the penalty.

3. COMMON LAW.

The common law is in force in Alaska only so far as its principles are applicable and suited to the conditions of the country and the necessities of the people, and are not repugnant to our statutes or the established customs and usages of the territory.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Common Law, § 9.]

4. LARCENY—ANIMALS—COMMON LAW—CRIMINAL LAW—DOGS.

The stealing of a dog is larceny under the common law and statutes in force in Alaska.

[Ed. Note.—For cases in point, set vol. 32, Cent. Dig. Larceny, § 17; vol. 2, Cent. Dig. Animals, § 2.]

The petitioner brings habeas corpus to procure his release from imprisonment in the jail at Rampart, Alaska, where he is confined upon conviction before a justice of the peace for the crime of petit larceny for stealing a dog.   His counsel makes these objections to the process under which he is confined:   (1) That the judgment and commitment are each void because neither affirmatively and clearly states that the defendant has been found guilty of a crime; (2) that the judgment is void for the reason that the justice exceeded his jurisdiction in adding to the sentence in the local jail a sentence of "hard labor" there-

in; (3) that the judgment does not find the defendant guilty of any specific crime, but only "guilty as charged in the complaint"; and (4) that the complaint does not state facts constituting a crime, as it charges the defendant only with stealing a dog, which, counsel for petitioner urges, is not larceny under the laws of Alaska.

E. M. Barnes, for petitioner.

N. V. Harlan, U. S. Dist. Atty.

WICKERSHAM, District Judge. Section 410 of the Code of Criminal Procedure provides:

"That a justice's court has jurisdiction of the following crimes: First. Larceny, where the punishment thereof may be imprisonment in the county jail or by fine."

Section 41 of the Penal Code provides that, if the property stolen shall not exceed the value of $35, the penalty for the theft shall be imprisonment in the county jail not less than one month nor more than one year, or by a fine not less than $25 nor more than $100. Upon the face of the marshal's return it appears that the prisoner is held under a conviction for larceny before a justice of the peace "for stealing a dog of the value of thirty-four dollars," and that the sentence was for nine months' imprisonment in the Rampart jail at "hard labor."

In the case of Ex parte Siebold, 100 U. S. 371, 375, 25 L. Ed. 717, the Supreme Court of the United States laid down the rule that:

"The only ground on which this court, or any court, without some special statute authorizing it, will give release on habeas corpus to a prisoner under conviction and sentence of another court, is the want of jurisdiction in such court over the prisoner or the cause, or some other matter rendering the proceedings void."

In re Coy, 127 U. S. 731, 757, 8 Sup. Ct. 1263, 1271, 32 L. Ed. 274, Mr. Justice Miller, speaking for the court, said:

"An imprisonment under a judgment cannot be unlawful unless that judgment is an absolute nullity; and it is not a nullity if the court

has general jurisdiction of the subject, although it should be erroneous."

It is equally well settled in that court that a writ of habeas corpus cannot be made to perform the functions of a writ of error or an appeal. To warrant the discharge of a petitioner under habeas corpus the sentence under which he is held must be not merely erroneous and voidable, but absolutely void. Ex parte Kearney, 7 Wheat. 38, 5 L. Ed. 391; Ex parte Watkins, 3 Pet. 193, 7 L. Ed. 650; Ex parte Milligan, 4 Wall. 2, 18 L. Ed. 281; Ex parte Reed, 100 U. S. 13, 25 L. Ed. 538; Ex parte Terry, 128 U. S. 289, 9 Sup. Ct. 77, 32 L. Ed. 405; Ex parte Cuddy, 131 U. S. 280, 9 Sup. Ct. 703, 33 L. Ed. 154; Nielsen, Petitioner, 131 U. S. 176, 9 Sup. Ct. 672, 33 L. Ed. 118; Ex parte Tyler, 149 U. S. 164, 13 Sup. Ct. 785, 37 L. Ed. 689; U. S. v. Pridgeon, 153 U. S. 48, 14 Sup. Ct. 746, 38 L. Ed. 631; In re Lennon, 166 U. S. 548, 17 Sup. Ct. 658, 41 L. Ed. 1110. If the court passing sentence had jurisdiction of the person, and acted otherwise within its jurisdiction, the only remedy for its error is by writ of error or by appeal.

There must, however, be jurisdiction to give the judgment rendered as well as to hear and determine the case. If a magistrate having authority to fine for assault and battery should sentence the offender to be imprisoned in the penitentiary, or to suffer the punishment prescribed for homicide, his judgment would be as much a nullity as if the preliminary jurisdiction to hear and determine had not existed. Every act of a court beyond its jurisdiction is void. Cornett v. Williams, 20 Wall. 226, 22 L. Ed. 254; Windsor v. McVeigh, 93 U. S. 274, 23 L. Ed. 914; Ex parte Reed, 100 U. S. 13, 25 L. Ed. 538. For the purpose of determining whether the court below has acted beyond its jurisdiction and the judgment or process is void, the court will examine the record so far as to ascertain that fact, and, if it be so, will discharge the prisoner. Ex parte Lange, 18 Wall. 163, 21 L. Ed. 872. The general principle to be drawn

from these decisions is embodied in the statute of this territory, and particularly in section 581 of the Code of Civil Procedure.

"Sec. 581. If it appear on the return that the prisoner is in custody by virtue of an order or civil process of any court legally constituted, or authorized by an officer in the course of judicial proceedings before him, authorized by law, such prisoner shall be discharged in either of the following cases: 1st. When the jurisdiction of such court or officer has been exceeded, either as to matter, place, sum or person; 2nd. When, though the original imprisonment was lawful, yet by some act, omission or event which has taken place afterwards, the party has become entitled to be discharged; 3rd. When the order or process is defective in some matter of substance required by law, rendering such process void; 4th. When the order or process, though in proper form, has been issued in a case not allowed by law; 5th. When the person having the custody of the prisoner under such order or process is not the person empowered by law to detain him; or, 6th. When the order or process is not authorized by any judgment of any court nor by any provision of law."

Under this statute, and the principles announced in the courts of highest resort, the only question in this case is whether or not the defendant is held by a void or valid process. Is the process void for want of jurisdiction?

The record discloses that the magistrate had jurisdiction over the person of the petitioner. The crime charged, if the act proved constitutes a crime, was within his express statutory jurisdiction, and the penalty, except the "hard labor" clause, was clearly such as he had power to impose. Four objections are really raised by the petition. The fifth paragraph alleges that:

"The complaint upon which this petitioner was tried in said justice's court by said justice of the peace aforesaid does not state facts sufficient to constitute a crime, and as this petitioner is informed and believes, and so states the fact to be, said judgment and said commitment are each void in law."

This is not the allegation of any fact, but is in the nature of a general demurrer to the complaint. The difficulty in considering it arises from the fact that the record does not con-

tain a copy of the complaint. The fourth paragraph of section 569 of the Code of Civil Procedure requires that a copy of the defective process "shall be annexed to the petition." It is not so annexed and is nowhere found in the record, and the court will not, therefore consider whether it ought to hear for the first time a general demurrer to a criminal complaint on a petition for habeas corpus.

The judgment of the justice's court and the commitment under which the prisoner is held are also attacked for want of sufficient averment. The marshal's return, as amended, contains the judgment, which is in substantial conformity with section 430 of the Code of Criminal Procedure. It shows upon its face the crime for which the accused was tried, his appearance, plea, trial, and sentence.

Even if it be conceded that the commitment is defective, the writ would not lie. Section 583 of the Code of Civil Procedure provides that:

"If it appear that the party has been legally committed for a criminal offense, or if it appear by the testimony offered with the return, or upon the hearing thereof, to be probably guilty of such offense, although the commitment is irregular, he shall forthwith be remanded to the custody or placed under the restraint from which he was taken, if the officer or person under whose custody he was be legally entitled thereto; if not so entitled, he shall be committed to the custody of the officer or person so entitled."

Before the petitioner is entitled to his discharge, then, it must be shown affirmatively on the face of his application that his restraint is without the support of the law—that it is in violation of law. To show errors in the judgment or commitment, or that he is restrained by the wrong officer, is not sufficient, for if this court finds that he is probably guilty of such offense he must be remanded to the proper restraint.

The judgment of the justice's court is also attacked and declared to be void because it condemns the prisoner to "hard labor" in the county jail, whereas the law provides only for

imprisonment therein. The fact that the court adjudged a penalty not authorized by law does not affect its original jurisdiction over the action or the person of the petitioner. That part of the penalty imposing imprisonment in the county jail is clearly within the statute, and the only question presented is whether the addition of the words "at hard labor" rendered the whole judgment void.

This question has been settled by the Supreme Court of the United States in the case of the United States v. Pridgeon, 153 U. S. 48, 14 Sup. Ct. 746, 38 L. Ed. 631, where the court said:

"Without undertaking to review the authorities in this and other courts, we think the principle is established that where a court has jurisdiction of the person and of the offense, the imposition of a sentence in excess of what the law permits does not render the legal or authorized portion of the sentence void, but only leaves such portion of the sentence as may be in excess open to question and attack; in other words, the sound rule is that a sentence is legal so far as it is within the provisions of law and the jurisdiction of the court over the person and offense, and only void as to the excess when such excess is separable, and may be dealt with without disturbing the valid portion of the sentence." See, also, Jackson v. U. S., 102 Fed. 473, 42 C. C. A. 452.

And in that case the court held that the excess in a sentence could only be avoided in a proceeding on writ of error, and said:

"Under a writ of habeas corpus the inquiry is addressed, not to errors, but to the question whether the proceedings and the judgment therein are for any reason nullities; and unless it is affirmatively shown that the judgment or sentence under which the prisoner is confined is void, he is not entitled to his discharge."

It does not appear upon the face of the petition or by the evidence in support of it that the "hard labor" clause in petitioner's sentence is being enforced against him, but only that the court below committed error in imposing it. Such error, under the rule laid down in United States v. Pridgeon, can only be corrected upon an appellate proceeding from the commissioner's court to this court. If, after the prisoner has served

2 A.R.—8

so much of his sentence as is legal, or an illegal and unauthoriz-ed penalty is actually being inflicted, a different question may arise from that which is now before the court.    In re Swan, 150 U. S. 653, 14 Sup. Ct. 225, 37 L. Ed. 1207.

A final and more serious question, however, is fairly raised upon this record, viz.:  Is a dog the subject of larceny in Alaska?  If not, the petitioner is held for the commission of an act which is not a crime, his sentence and commitment are void, and he is entitled to his discharge on habeas corpus.

Section 42 of the Penal Code of Alaska provides a penalty of not less than one year nor more than seven years for the crime of larceny from a house, boat, or public building, and sec-tion 43 a penalty of not less than one year nor more than fifteen years for larceny of any horse, gelding, mare, colt, mule, ass, jenny, bull, steer, cow, calf, or reindeer.   The larceny of a dog is not included within either section, and a justice of the peace has no jurisdiction over any crime arising thereunder.   Such offenses are felonies, and only punishable after indictment in the district court.   Section 41, however, provides that if any per-son shall steal any goods or chattels, or any government note, promissory note, or bill of exchange, bond, or other things in action, or any book of accounts, order, or certificate concerning money or goods due or to become due or to be delivered, or any deed or writing containing a conveyance of land or any interest therein, or any bill of sale or writing containing a conveyance of goods or chattels, or any interest therein, or any other valu-able contract in force, or any receipt, release, or defeasance, or any writ, process, or public record, the property of another, he is guilty of larceny.   If the property stolen is of a greater value than $35, he shall be punished by from one to ten years in the penitentiary, and, if of less value, by imprisonment in the county jail not less than one month nor more than one year, or by a fine not less than $25 nor more than $100.   By section 410 of the Code of Criminal Procedure a justice of the peace

is given special jurisdiction in cases of petit larceny, i. e., where the punishment thereof may be imprisonment in the county jail or by fine.

The prisoner at the bar was convicted of petit larceny before a justice of the peace, the dog being alleged by the complaint to be of the value of $34 only, and the offense consequently punishable by imprisonment in the county jail or by fine. The dog is not specifically mentioned in the statutes of Alaska among the animals or other property subject to larceny. If it is property whose taking is larceny, it must be because it is included within the phrase "goods and chattels," whose unlawful taking is made larceny by section 41 of the Penal Code. It is contended, however, that these words must be given a limited construction, because all other classes of property mentioned in the section are writings, notes, bonds, deeds, book accounts, and public records, and that the phrase should be construed as if it read "and other similar goods and chattels," and cannot be fairly extended to include a dog. In some states it has been held that a dog is not included in the phrase "goods and chattels" in a larceny statute, and that the animal is not the subject of larceny. State v. Lymus, 26 Ohio St. 400, 20 Am. Rep. 772; Findlay v. Bear, 8 Serg. & R. (Pa.) 571. It is also urged that, as section 43 of the Penal Code provides a specific penalty for the larceny of a long list of domestic animals, in which the dog is not mentioned, it is necessarily excluded from the protection of the law. Section 43, however, does not specifically mention hogs or sheep, yet it can scarcely be contended that they are not the subject of larceny. Gold dust, the most familiar and common form of wealth in a mining region, is not specifically mentioned, yet it cannot be doubted that its unlawful taking may be punished as larceny. A distinction, however, is said to exist between the unlawful taking of these forms of property value and the dog, based upon the argument that hogs, sheep, and gold dust were recognized as the subject of lar-

ceny at the common law, while the unlawful taking of a dog never was. I cannot agree with that argument.

Whoever gives time to the study of the ethnology or history of Alaska learns that the dog has been, next to man, the most important factor in its past and present development. The Eskimo tribes along 10,000 miles of Arctic shore line have long used the dog as a beast of burden, and out of the survival of the fittest they have there developed a type particularly adapted to the rigors and hardships of hyperborean life. Russian discoverers found him drawing native sleds along the Arctic ice. pack; the earliest Hudson Bay traders were carried into the remotest recesses of the great fur land, and their rich packs transported to distant posts, by this faithful animal. When the discovery of the Klondike and Alaskan gold fields attracted American miners into this region, he was found to be their most useful and faithful assistant. He has ever since been the constant companion and servant of the prospector, miner, and freighter, and without his aid the efforts of even American miners to develop the gold fields must have languished. He carries the United States mail from Dawson to Nome and return, to the Koyukuk and the Tanana. As an aid to the administration of justice he has overtaken many a fugitive criminal, transported the officers of the law and the mandates of this court and in the performance of my own official duties I have traveled more than 1,000 miles during a winter along the frozen Yukon with my team of native dogs, my blankets, food, and court's files and documents. Last winter a whole population of American citizens invaded the trackless wilderness of the Tanana Valley, crossing a snowy range along a sled-marked trail, and founded permanent settlements in the Fairbanks gold. fields, using the dog as the only means of transportation. The dog has a fixed market value as a beast of burden and a domestic animal in central and northern Alaska, and is to this far northland what the horse was to the development of the great plains west

of the Mississippi river. It ought not to be presumed that Congress was ignorant of his value to the people of Alaska when it passed the Penal Code. On the contrary, the court will take judicial notice of its use by the native tribes, and the important part which it has taken in the development of central and northern Alaska, and its use as a domestic animal. These are matters of common notoriety.

The common law of England has been extended to Alaska. Section 218 of the Penal Code provides:

"The common law of England as adopted and understood in the United States shall be in force in said district, except as modified by this act."

A year later Congress enacted in the Civil Code (section 367):

"So much of the common law as is applicable to and not inconsistent with the Constitution of the United States or with any law passed or to be passed by the Congress is adopted and declared to be the law within the district of Alaska."

What is the common law of England, and what part of it is applicable to and in force in Alaska under these enactments?

The common law includes those principles, usages, and rules of action applicable to the government and security of person and property which do not rest for their authority on any express and positive declaration of the will of the Legislature (1 Kent's Com. 533); a system of elementary principles and of general judicial truths which are continually expanding with the progress of society, and adapting themselves to the gradual changes of trade and commerce and the mechanic arts and the exigencies and usages of the country (Pierce v. Props. Swan Point Cemetery, 10 R. I. 227, 14 Am. Rep. 667).

In the case of Wheaton v. Peters, 8 Pet. 591, 8 L. Ed. 1055, the Supreme Court of the United States said:

"When the ancestors of the citizens of the United States emigrated to this country, they brought with them, to a limited extent, the

English .common law as part of their heritage. No one will contend that the common law as it existed in England has ever been in force in all its provisions in any state in this Union. It was adopted only so far as its principles were suited to the condition of the colonies, and from this circumstance we see what is common law in one state is not so considered in another. The judicial decisions, the usage and customs of the respective states, must determine how far the common law has been introduced and sanctioned in each."

And in Patterson v. Winn, 5 Pet. 233, 8 L. Ed. 108, the same court held:

"These statutes, being passed before the migration of our ancestors, being applicable to our situation, and in amendment of the law, constitute a part of our common law."

Also in the case of the United States v. Shepherd, Fed. Cas. No. 16,273, it was held:

"The English system of jurisprudence brought by our ancestors as the common law and those statutes applicable to the situation of the colonies, which extended to them and were adopted by usage or acts of assembly, have been by the United States courts held to be the common law of this country. Patterson v. Winn, 5 Pet. 241, 8 L. Ed. 108; Bains v. The James & Catherine, Fed. Cas. No. 756.

Judge Cooley lays down this doctrine in his Constitutional Limitations (section 25):

"The colonies had Legislatures of their own, by which laws had been passed which were in force at the time of the separation, and which remained unaffected thereby. When, therefore, they emerged from the colonial condition into that of independence, the laws which governed them consisted—first, of the common law of England, so far as they had tacitly adopted it as suited to their conditions; second, of the statutes of England or Great Britain amendatory of the common law, which they had in like manner adopted; and, third, of the colonial statutes. The first and second constituted the American common law."

See, also, Sedgwick, St. & Const. Law, 10, 14. And in the case of Browning v. Browning the Supreme Court of the territory of New Mexico, under a statute similar to ours, held:

"We are therefore of opinion that the Legislature intended by the language used in that section to adopt the common law, or lex loci

non scripta, and such British statutes of a general nature not local to that kingdom, nor in conflict with the Constitution or laws of the United States nor of this territory which are applicable to our condition and circumstances, and which were in force at the time of our separation from the mother country." 3 N. M. (Johns.) 469 (Gild. 659), 9 Pac. 682.

Such is the understanding of the common law in the United States.

The common law of England, then, is in force in Alaska only so far as its principles are applicable and are suited to the conditions of the country and the necessities of the people, and not repugnant to our laws or to the established customs and usages of the people of the territory. Blackstone has defined larceny to be "the felonious taking and carrying away of the personal goods of another." Unless the property stolen had a real value, however small, it was not larceny to take it. Under this doctrine it was held not to be larceny at common law to take another's dog. Blackstone puts it upon the ground that the dog is one of "those animals which do not serve for food, and which, therefore, the law holds to have no intrinsic value." Only property of some value could be the subject of larceny in England under the common-law rule, and dogs had no intrinsic value, and for this reason alone they were not the subject of larceny. In Alaska, on the contrary, dogs have a fixed and permanent value as beasts of burden, and hence, even under the principle of the common-law rule in England, are the subject of larceny.

But the old common-law rule in England had been changed prior to our independence by the statute of Geo. III, c. 18, which provided high pecuniary penalties or a long imprisonment, and whipping in their stead, on such as stole a dog. 4 Blackstone, Comm. 236. At the date of our independence that statute was in force. It seems to follow, logically, that the old common-law rule never became the rule in the United States, for the statute of Geo. III, being in amendment of the com-

mon law and applicable to our condition, became the rule instead.

However this may be, the weight of authority and the more recent decisions favor the conclsuion that the word "chattels" in section 41 of the Penal Code of Alaska is sufficiently broad and comprehensive to include, not only the, hog and sheep, but the dog, and that upon the enactment of that section by Congress it was and now is a larceny to unlawfully take and convert another's dog. Hamby v. Samson (Iowa) 74 N. W. 918, 40 L. R. A. 508, 67 Am. St. Rep. 285; Com. v. Hazelwood, 84 Ky. 681, 2 S. W. 489; Harrington v. Miles, 11 Kan. 481, 15 Am. Rep. 355; Mullaly v. People, 86 N. Y. 365; State v. Yates, 19 Ohio L. J. 150, 10, Crim. Law Mag. 439; State v. Brown, 9 Baxt. (Tenn.) 53, 40 Am. Rep. 81; Hurley v. State, 30 Tex. App. 333, 17 S. W. 455, 28 Am. St. Rep. 916; Lynn v. State, 33 Tex. Cr. R. 153, 25 S. W. 779. In this territory the dog is property—a chattel with a fixed market value as a domestic beast of burden—and is the subject of larceny, within the very principle of the old common-law rule. The writ applied for will be denied, and the prisoner remanded to the custody of the marshal to serve his sentence.