CASE 29.—ACTION BY JOHN B. WOMACK AND OTHERS
AGAINST HENRY W. McGLONE, SHERIFF, TO
TEST THE VALIDITY OF AN ACT IMPOSING A
TAX ON DOGS.—June 17.

# McGlone, Sheriff, v. Womack, &c.

Appeal from Carter Circuit Court.

M. M. REDWINE, Circuit Judge.

Judgment for plaintiffs. Defendant appeals.—Reversed.

1. Statutes—Subjects and Titles—Act to Promote Sheep Industry.—Act March 1, 1906 (Acts 1906, p. 25, c. 10), entitled "An act to promote the sheep industry and to provide a tax on dogs," is not repugnant to Const. Sec. 51, providing that no law enacted by the General Assembly shall relate to more than one subject, which shall be expressed in the title, where it is apparent that the subject-matter of the act is the promotion of the sheep industry, and that this is accomplished by the imposition of a tax on dogs for the purpose of creating a fund to remunerate the owners of sheep killed by dogs.

2. Licenses—Constitutional Restrictions—Public Purposes.—Act March 1, 1906 (Acts 1906, p. 25, c. 10), providing for the imposition of a tax on dogs to create a fund for the remuneration of the owners of sheep for losses suffered by the killing of their sheep by dogs, is not a revenue statute, but is a police regulation for the keeping and ownership of dogs, and therefore such statute is not repugnant to Const. sec. 171, providing that taxes shall not be levied for other than public purposes.

3. Same—Taxation According to Value.—Act March 1, 1906 (Acts 1906, p. 25, c. 10), providing for the imposition of a tax on dogs to create a fund for the remuneration of the owners of sheep suffering losses from the killing of sheep by dogs, is not a revenue measure, but is a police regulation of the keeping and ownership of dogs, and therefore is not

McGlone, Sheriff, v. Womack, &c.

repugnant to Const., sections 172, 174, providing that all property not exempt from taxation shall be assessed at its fair cash value, and taxed in proportion thereto.

4. Same—Regulation of Dogs—Killing Sheep—Remuneration of Owners of Sheep.—Act March 1, 1906 (Acts 1906, p. 25, c. 10), providing for the imposition of a tax on dogs for the creation of a fund to remunerate owners of sheep for losses arising from the killing of sheep by dogs, is a valid exercise of the police power of the Legislature to regulate the keeping and ownership of dogs.

5. Same—Collection of License Tax—Compensation of Collector. —Act March 1, 1906 (Acts 1906, p. 25, c. 10), providing for a license tax on dogs to provide a fund for the remuneration of the owners of sheep suffering losses from dogs, and providing that the tax shall be assessed and collected as other taxes, is not invalid for failure to provide compensation to the sheriff for collecting the tax, since it is apparent from the act that the gross amount of the dog tax collected is to be added to the total amount of the revenue tax collected, and upon the whole amount the officer's remuneration is fixed by Ky. St. 1903, sec. 4148.

O'Rear, C. J., and Nunn and Carroll, JJ., dissenting.

JAMES BREATHITT, Attorney General, for Appellant.

POINTS ARGUED AND AUTHORITIES.

The Act of the General Assembly approved March 1, 1906, considered:

1. This Act does not levy a tax under sec. 171 of the Constitution. (Constitution of Ky., secs. 171, 172.)

2. The Act of March 1st, 1906, is a valid exercise of the police powers of the State. (Ex Parte Cooper, 3 Texas, 489; 30 Am. Rep., 152; Morey v. Brown, 42 N. H., 373; Baker v. Panola County, 30 Texas, 86; Holst v. Roe, 39 Ohio St., 340; Phillip Cole v. John Hall, 103 Ill. Rep., 30; Mitchell v. Williams, 27th Ind., 62; Thorpe v. The Rutland & Burlington Railway Co., 37 Vt., 140, and other cases; Jas. Van Horn v. The People, 46 Mich., p. 183; City of Carthage v. Rhodes, 9 L. R. A., 352 (Missouri); William D. Longyear v. Mayton J. Buck, 10 L. R. A., 43 (Mich.); Fox v. Hudson River Humane Society, 51 L. R. A., 681 (N. Y.)

3. The Statute of Kentucky does not change the property status of the dog. (Sec. 6, of the Act of 1906.)

4. Even if it were assumed that dogs are property in the

McGlone, Sheriff, v. Womack, &c.

fullest sense, they would still be subject to police power. (U. S. Rep. L. Ed. Book 41, p. 1169; Geo. W. Sentell v. New Orleans & Carrollton R. R. Co.)

J. S. MORRIS, Attorney for the Commonwealth and Appellants.

N. B. HAYS, C. H. MORRIS, &c., of Counsel.

CASES AND AUTHORITIES REFERRED TO:

Const. of Ky., secs. 51, 171, 172, 174, 181, 11; Acts 1906,25; Brown-Foreman Co. v. Com. 30, Ky. Law Rep.; Johnson v. Higgins, 60 Ky., '566; Allen v. Hall, 14 (Bush) 85; Huyner v. Com., 24 Ky. Law Rep., 608; Montclair v. Ransdall, 107 U. S., 147; Purnell v. Mann, 20 Ky. Law Rep.; 1146; Com. v. Reinicke Coal Co., 25 Ky. Law Rep., 2030; Herndon v. Fermer, 24 Ky. Law Rep., 1049; Ky. Stat., secs. 64, 65, 66, 68, etc.; Broaddus Dec., v. Broaddus Heirs, 73 Ky. (Bush) 299; Thierman v. Com., 30 Ky. Law Rep., 72; Berea College v. Com., 29 Ky. Law Rep., 284; Leach v. Elwood, 3 Ill. App., 453; Julien v. Jackson, Miss., (1891); Blair v. Forehand, 100 Mass. 136 1 Am. Rep., 4; 5 Amend. U. S. Const.; Com. v. Markham, 70 Ky. (7 Bush) 486; State v. Harriman, 75 Me., 562; Walker v. Towle, 156 Ind., 639; Bradford v. M'Kibben, 4 Bush, 545; Sentell v. N. O. & T. P. R. R., 166 U. S. 701 (41 L. Ed., 1171); Fox v. Mohawk, etc., Humane Society, 80 Am. St. Rep., 769; Mullaly v. People, 86 N. Y., 365.).

JAS. ANDREW SCOTT, W. C. MARSHALL, for Appellee.

POINTS AND AUTHORITIES RELIED ON:

1. The Act is void under Sec. 171 of the Constitution of Ky. (Cooley on Const. Lim., page 242; 14 B. Mon., 498; Lancaster v. Clayton, 86 Ky., 373; 9th Ben Mon., 344; 12th Bush, 312; 82nd Ky., 417; 2nd Met., 350; 7th Ben. Mon.; Building & Loan cases; 19 Ky. Law Rep., 1176, 1325, and 1984.)

2. It is not a legitimate exercise of the police power. (Gillan v. Hutchinson, 16 Cal., 153; Harding v. Butts, 18 Ill., 502; Lee v. Newkirk, 18 Ill., 551; People v. Ryder, 58 Hunn., 507: Dibrell v. Morris, 89 Tenn., 497; 45 N. J., 91; 18 N. J., 54; 8th Ohio St., 333; 11 Mich., 139.)

3. It is class legislation. (10th Tenn., 554; 39 Tenn., 276; 51 Tenn., 357; 53 Tenn., 186; 96 Tenn., 696; 77 Wis., 288; 39 Penn. St., 73; 1st Bush, 548; 80 Ky., 608; 82 Ky., 579; 11th Law

Rep., 808; 12th Law Rep., 138; Lou. Trust Co. v. Lewis, 82 Ky., 579.)

4. The act was in violation of subsec. 5 of sec. 1 of the Bill of Rights, which guarantees the right of acquiring and protecting property.

5. It is in violation of sec. 3 of the Bill of Rights, which provides that no grant of exclusive, separate public emolument or privileges shall be made to any man or set of men, except in consideration of public services. (82 Ky., 579, 645; 12 Bush, 110, Building & Loan cases.)

6. The act is in contravention of sec. 13 of the Bill of Rights, which provides: "Nor shall any man's property be taken or applied to public use without the consent of his representatives, and without just compensation be made to him."

7. The act is in violation of sec. 51 of the Constitution of Kentucky.

2. The act is in violation of sub-sec. 15 of sec. 59 of the Constitution of Kentucky, which provides, that no special act shall be passed by the General Assembly to authorize or to regulate the levy, assessment or collection of taxes.

9. The act is in violation of sec. 11 of the Bill of Rights, which provides that the property of the citizen cannot be taken except by the "law of the land." (Loesch v. Keelher, 144 Ind., 278; King v. Hays, 80 Maine, 206; People v. Tigh, 30 N. Y., 368; Brill v. Ohio Humane Society, 40 Ct. Rep., 378; Marshall v. McDaniel, 12 Bush, 378; Varden v. Mount, 78 Ky., 86; Com'lth. v. Jones, 10 Bush, 725; Page v. Hardin, 8 Ben Mon., 672.)

10. An examination of the cases where an act like this has been upheld will disclose two prominent facts: First, that the constitutions of those States are wholly unlike the present Constitution of Kentucky. Second, that in those States dogs are not property.

OPINION OF THE COURT BY JUDGE BARKER—Reversing.

This action was instituted by appellees, citizens of Carter county, Ky., and owners of dogs, to test the validity of an act of the General Assembly of the Commonwealth of Kentucky, approved March 1, 1906, entitled "An Act to promote the sheep industry and to provide a tax on dogs." Acts 1906, p. 25, c. 10. By

the first and second sections of the act a license tax of $1 per capita is required to be assessed upon every dog four months old within the Commonwealth, which the owner of the animal is required to pay. This tax is required to be levied and collected as are other taxes, and paid over to the State Treasurer, but to be kept separate from the other public accounts and taxes by the Auditor and Treasurer. The funds thus raised are declared to be for the purpose of indemnifying losses by the killing or injuring of sheep by dogs. The third and fourth sections of the act provide how the losses by the killing of sheep by dogs shall be proved and paid; and, if there be any surplus after paying all losses occuring by the killing of sheep by dogs, it shall be paid over to the school fund of the county in which it was assessed. There are several other provisions of the act, but a consideration of them is not necessary to an adjudication of its validity. The petition sets forth the act and the fact that it was about to be enforced by the sheriff and assessor of Carter county, and prays for an injunction restraining these officers from its enforcement on the ground of its invalidity. A general demurrer to the petition was overruled, and, the officers declining to plead further, a judgment was rendered in accordance with the prayer of the petition; and, from this judgment, this appeal is prosecuted.

The first objection to the act is that its title is inimical to section 51 of the Constitution, which provides that "no law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title;" it being said that the title of this act relates to two separate subjects of legislation, and is therefore invalid. If the act under consideration does relate to two subjects, it goes without saying that

it is void as a whole. But we do not agree that the title before us relates to two subjects. The subject-matter of the act is the promotion of the sheep industry, and this is to be accomplished by the imposition of a tax on dogs. No other attempt to promote the sheep industry is indicated by any provision in the act taken as a whole. It may be that the title to the act is somewhat awkwardly expressed. What it really means is that it is an act to promote the sheep industry by providing a tax on dogs, and, when thus read, all duality disappears. A second objection to the act is that it is violative of section 171 of the Constitution, in that the taxes imposed are not collected for public purposes; and, third, it is invalid because in violation of sections 172 and 174 of the Constitution, which require all property in the Commonwealth, not exempted from taxation by the Constitution, to be assessed at its fair cash value and taxed in proportion thereto. These two objections may be considered together, and they involve a most important part of the claim that the act is invalid.

The first question to be determined is whether or not the statute before us is a revenue statute, or whether it was enacted for the purpose of police regulation. That it was not intended as a revenue statute is obvious from the most superficial reading. The title declares the purpose of the enactment to be the promotion of the sheep industry by the levy of a tax on dogs, and the body of the act shows clearly that its object is to remunerate the owners of sheep for any losses they may suffer by the killing of their sheep by dogs. The license tax imposed, then, was intended by the Legislature to be a regulation of dogs, and in this way to promote the sheep industry. This confronts us with the question as to whether or not it is within

the competency of the Legislature to regulate dogs in the manner undertaken to be done in the statute before us. That dogs are an appropriate subject of regulation under the police power of the State is established by an overwhelming weight of judicial authority; and unquestionably it is entirely within the power of the Legislature to prohibit the ownership of dogs at all, and to provide, where their ownership is allowed, any regulation which the legislative discretion may impose. Nowhere has this doctrine been asserted with greater clearness than by our own court.

In the case of Bradford v. McKibben, 4 Bush, 545, an act was upheld which authorized the killing of any dog found on the premises of a neighbor without the presence of its owner or keeper. In its opinion the court said: "Whatever may be the temptations, therefore, to entice a dog from home without the presence of his owner or keeper, even though it be for the propagation of his species, his innocence is no protection to him. If he is found roaming on a neighbor's premises without the presence of his protector, his life is forfeited, if the owner of the premises on which he is found will exact the penalty, and chooses to execute the sentence." In the case of Commonwealth v. Markham, 7 Bush, 486, an ordinance of the city of Frankfort provided "that all persons owning or controlling dogs within the city of Frankfort are hereby required annually, on the 10th day of April, to apply to the city clerk to register, and procure a brass collar, duly stamped, for each dog, and pay to the clerk at the time of registry a tax of two dollars for every dog so owned and registered; which tax the clerk shall pay into the city treasury. Any person failing to comply with the provisions of this ordinance shall, on conviction before the police judge, be fined the sum of

five dollars for each day of failure and for each dog owned or controlled by him not registered as aforesaid. The marshal or any police officer shall forthwith kill any dog found upon the streets without such collar so procured from the city clerk." The charter of the city of Frankfort only authorized the council to levy ad valorem taxes on the real and personal estate of its citizens for local revenue; so that, if the ordinance was for revenue only, it was void as being contrary to the charter. The court held that the act was sanitary, and not for revenue, and upheld the ordinance under the police power delegated to the city by its charter. In the opinion it is said: "Presuming that the owners of worthless or pestilent dogs would not pay such a tax for such a license, the expulsion or destruction of inferior or dangerous dogs, as well as protection to the useful class, was the constructive aim of this enactment by the council. The purpose was sanitary, and not fiscal. How far the end may be accomplished by the means prescribed is for the municipality, and not the judiciary, to decide. And this court can not adjudge that because a more adaptable expedient, molded in better form, might have been chosen, that which has been adopted was unauthorized." In the case of Sentell v. New Orleans, etc., Railroad Co., 166 U. S. 698, 17 Sup. Ct. 693, 41 L. Ed. 1169, the Supreme Court of the United States upheld as constitutional a law of the State of Louisiana requiring dogs to be placed upon the assessment rolls, and limiting any recovery by the owner to the value fixed by himself for the purpose of taxation. The court, through Mr. Justice Brown, in a very learned opinion discusses in a broad and philosophic manner the whole subject of the property in dogs, and the question as to whether or not and

how far these animals are subject to the police power
of the State. The rule as to the right of the State to
prohibit the keeping of dogs is thus stated: ''Even
if it were assumed that dogs are property in the full-
est sense of the word, they would still be subject to the
police power of the State, and might be destroyed or
otherwise dealt with, as in the judgment of the Legis-
lature is necessary for the protection of its citizens.
That a State in a bona fide exercise of its police power
may interfere with private property, and even order
its destruction, is as well settled as any legislative
power can be which has for its objects the welfare and
comfort of the citizen. For instance, meats, fruits,
and vegetables do not cease to become private prop-
erty by their decay; but it is clearly within the power
of the State to order their destruction in times of
epidemic, or whenever they are so exposed as to be
deleterious to the public health. There is also prop-
erty in rags and clothing; but that does not stand in
the way of their destruction in case they become in-
fected and dangerous to the public health. No prop-
erty is more sacred than one's home, and yet a house
may be pulled down or blown up by the public author-
ities, if necessary to avert or stay a general conflagra-
tion, and that, too, without recourse against such
authorities for the trespass. Bowditch v. Boston, 101
U. S. 16, 25 L. Ed. 980; Mouse's Case, 12 Coke 63;
Governor, etc., v. Meredith, 4 T. R. 794; Stone v. May-
or, etc., 25 Wend. (N. Y.) 157; Russell v. Mayor, etc.,
2 Denio (N. Y. 461.'' To the same effect is Blair v.
Forehand, 100 Mass. 136, 97 Am. Dec. 81, 1 Am. Rep.
94; Morey v. Brown, 42 N. H. 373. In 22 Am. & Eng.
Ency. of Law, tit. ''Police Power,'' p. 930, it is said:
''The police power of the State has been used to a
greater extent to regulate and control the keeping of

and property in dogs than any other class of domestic animals. And statutes requiring the payment of a license fee, sometimes denominated a tax, for the keeping of dogs are very usual, as also are provisions requiring all dogs running at large to be muzzled. And the police power has even been held to extend to authorizing the summary killing of dogs found running at large contrary to law.'' Cooley, in his work on Constitutional Limitations (7th Ed.), p. 881, note 3, thus summarizes the law on the subject in hand: ''Dogs are subject to such regulations as the Legislature may prescribe, and it is not unconstitutional to authorize their destruction, without previous adjudication, when found at large without being licensed and collared according to the statutory regulation. (Authorities omitted.) As a measure of internal police, the State has the power to encourage the keeping of sheep, and to discourage the keeping of dogs, by imposing a penalty upon the owner of a dog for keeping the same (Mitchell v. Williams, 27 Ind. 62), or by imposing a dog tax for a fund to indemnify sheep owners for losses suffered from dogs (Van Horn v. People, 46 Mich. 183, 9 N. W. 246, 41 Am. Rep. 159).'' In the case of City of Carthage v. August Rhodes, 101 Mo. 175, 14 S. W. 181, 9 L. R. A. 352, the supreme court of Missouri upheld an ordinance of the city of Carthage licensing dogs and cats, and providing for their being impounded or destroyed if found running at large contrary to the ordinance. In the opinion it was said: ''Taxation may be for the purpose of raising revenue or for the purpose of regulation. Where for the purpose of regulation, it is an exercise of the police power of the State. They are both distinct co-existent powers in the State, and either or both may be exercised through a municipal

corporation. In this case, by the terms of the charter, both powers are granted to the city of Carthage as to the dogs of that city. The dog license tax required by its ordinance is easily referable to the exercise of the police power granted." In the case of Fox v. Mohawk & Hudson River Humane Society, 165 N. Y. 517, 59 N. E. 353, 51 R. A. 681, 80 Am. St. Rep. 767, the court of appeals of New York upheld a statute of that State which authorized the Humane Society to kill unlicensed dogs without notice to the owner and without any judicial proceeding.

From the foregoing authorities and upon principle, we are of opinion that the regulation of dogs is within the police power of the State, and that it is competent for the Legislature to prohibit the keeping of dogs entirely, or, if it is necessary for the public welfare, any other regulation may be adopted which to the Legislature may seem most expedient for the promotion of that end. We are also of opinion that, the statute not being for revenue, but an exercise of the police power, its provisions are not regulated by any section of the Constitution relating to fiscal matters, and, although the sum required to be paid by the owner of each dog four months old is called a tax, and it is required to be assessed by the assessor, collected by the sheriff and paid over to the State Treasurer, this is only a mode of regulating the dogs within the State and protecting the sheep industry to the extent that the burden imposed will result in the destruction of worthless and dangerous dogs, and create a fund to pay losses for the destruction of sheep by dogs. We do not think it can be doubted that, if it is competent for the Legislature to prohibit the ownership of dogs or to prohibit them running at large, it is also competent for it to impose any other

regulation which in its wisdom is best adapted to promote the sheep industry. Therefore it seems to us competent for the Legislature to say to the owners of dogs in the State: "You may own dogs and you may permit them to run at large, but you must as a condition precedent to this privilege provide a fund by which their ravages on sheep may be paid for." That the State may do this legitimately seems quite clear, unless we are prepared to say that the less is not included in the greater, or a part in the whole. Surely, if dogs may be destroyed altogether, or their ownership prohibited, any less drastic legislation is entirely within the competency of the Legislature. It is true in the case of Commonwealth v. Hazelwood, 84 Ky. 681, 8 Ky. Law Rep. 586, 2 S. W. 489, it was held that in our State the common-law rule that dogs were not property has been modified or abrogated by statutes which tax them and thus recognize them as property. Dogs are therefore made property by statute; and when these animals, which were not property at the common law, are raised to the dignity of property by the statute, it is entirely competent for the Legislature to fix such conditions as it chooses. The statute before us, which makes dogs property, requires as a condition precedent that the owners of them shall pay a tax, the proceeds of which will insure sheep raisers against the effect of their ravages. That this can be done constitutionally is sustained by the great weight of authority. In the case of Holst v. Roe, 39 Ohio St. 340, 48 Am. Rep. 459, the law imposing a per capita tax on dogs, and appropriating the funds so created for the purpose of paying any loss occurring to the owners of sheep by the killing of the property by dogs, was upheld as a valid and constitutional exercise of the

police power of the State.    To the same effect is
Mitchell v. Williams, 27 Ind. 62; Van Horn v. People,
46 Mich., 183, 9 N. W. 246, 41 Am. Rep. 159; ex parte
Cooper, 3 Tex. App. 489, 30 Am. Rep. 152; Cole v.
Hall, 103 Ill. 30; Longyear v. Buck, 83 Mich. 236, 47
N. W. 234, 10 L. R. A. 43; Freund on Police Power,
section 434; State Regulation of Personal Property
(Tiedeman), pp. 845, 846.

Nor do we think the act is inimical to that portion
of section 3 of the Bill of Rights which· provides:
" * * * And no grant of exclusive, separate public
emoluments or privileges shall be made to any man or
set of men, except in consideration of public services.
* * * " As we view it, the statute does not confer
any special privilege on the owner of sheep.  It merely
protects these owners from the destruction of their
property by dogs.  It is the duty of the State to pro-
tect every citizen in his life, liberty, and property;
and it certainly is within the competency of the Legis-
lature to exercise the police power of the State to
protect all property against the ravages of destructive
animals.  The question as to how this is to be done
and what property is to be so protected is a matter of
of legislative discretion.  Undoubtedly the sheep in-
dustry is a most important one to the whole State.
All of our citizens are interested in an industry which
supplies the market with wholesome meat, provides
means of obtaining warm and comfortable clothing,
and at the same time furnishes labor to the otherwise
unemployed.  It is only necessary to allude to this
phase of the question.  The importance of the indus-
try as a whole is most obvious.  It is equally obvious
that sheep are peculiarly liable to the ravages of dogs.
They have neither the fleetness to escape nor the cour-
age to defend themselves from attack, and their silent

suffering enables the dog to prey upon them without any danger that the owner will be warned of the destruction of his property by the outcry of the dying animal. No other domestic animal that we can call to mind is so liable to destruction by dogs as the sheep. It therefore seems to us clearly the duty of the State, if the furtherance of the sheep industry is a desirable end, to so regulate the ownership of dogs as to protect the sheep from destruction by these animals. The statute is certainly a reasonable one, and lays only a small burden upon the owner of each dog; and, in effect, it only requires the owner to make good the damage only by his property. The fact that sheep are generally killed at night when it is impossible to ascertain the owner of the dog committing the ravage makes it necessary, if protection is to be had through this channel at all that each owner of a dog should be required to contribute a small amount to a common fund dedicated to the remuneration of owners of sheep killed by unknown dogs. As said before, this is simply requiring the owners of dogs to make good the ravages of dangerous animals kept by them; and no citizen has just cause of complaint, if he keeps animals destructive to the property of others, that he is required to make good the damages done by them. The statute in truth, is but an enforcement of the maxim, "sic utere tuo ut allenum non lædas," and, as such, its constitutionality is beyond successful question.

Thus far we have rested the right of the Legislature to provide a fund for the payment of losses of sheep by the ravages of dogs alone upon the police power of the State, but in the case of Ky. Live Stock Breeders Asso. v. Hager, Aud., 120 Ky. 125, 85 S. W. 738, 27 Ky. L. R. 518, we upheld an act which appro-

priated $15,000 per annum from the funds in the pub-
lic treasury raised by taxation to provide for the
improvement and development of live stock, agricul-
ture, and kindred interests by the establishment and
maintenance of a State fair. In the opinion, in re-
sponding to the objection to the act, that the money
appropriated was not for a public purpose, it was
said: "It is also insisted that a State fair is not a pub-
lic purpose for which the money of the State may be
appropriated by the Legislature, and that the act
merely gives a bounty of $15,000 to appellant. The
appropriation to the World's Fair was sustained by
this court (Norman v. Board of Managers, 93 Ky.
537, 14 Ky. Law Rep. 529, 20 S. W. 901, 18
L. R. A. 556), and, if the Legislature may
appropriate money in aid of a fair held in
another State to properly represent the State in
such a fair, it is hard to see how a fair held within
the State to make an exhibit of the products of the
State is not equally a public purpose. Such legisla-
tion has been sustained by the current of authority in
the other States of the Union having constitutions
substantially the same as ours. Daggett v. Colgan,
92 Cal. 53, 28 Pac. 51, 14 L. R. A. 474, 27 Am. St.
Rep. 95; State v. Cornell, 53 Neb. 556, 74 N. W. 61,
39 L. R. A. 513, 68 Am. St. Rep. 629; Sharpless v.
Mayor of Philadelphia, 21 Pa. 147, 59 Am. Dec. 759;-
City of Minneapolis v. Janney, 86 Minn. 111, 90 N. W.
312; Downing v. Indiana State Board of Agriculture,
129 Ind. 443, 28 N. E. 123, 614, 12 L. R. A. 664; Shelby
County v. Tennessee Centennial Exposition, 96 Tenn.
653, 36 S. W. 694, 33 L. R. A. 717; Bennington v.
Park, 50 Vt. 178. In House of Reform v. City of
Lexington, 112 Ky. 171, 23 Ky. Law Rep. 1470, 65 S.
W. 350, and Hager v. Children's Home Society, 119

Ky. 235, 83 S. W. 605, 26 Ky. Law Rep. 1133, 67 L. R. A. 815, we held that the State might appropriate money to a public purpose, and make an existing corporation its agent for the disbursement of the appropriation just as it may appoint other agencies for this, purpose. We adhere to the rule laid down in those cases for the reasons there given." It would be difficult to point out a difference in principle between promoting any one agricultural interest and the promoting of all agricultural interests, in so far as being a public purpose is concerned. If the whole State may be taxed for the purpose of maintaining a State fair to exhibit the various agricultural interests, we are unable to see why it may not be taxed to prevent the destruction of sheep by dogs. But we are not driven to resting the case upon this latter principle, as we are convinced that the police power of the State affords a firm foundation upon which to base our opinion in upholding the act involved in this litigation. The act which we herein construe does not fix by its terms the compensation to the sheriff for collecting the tax, and we are asked to say in this opinion how the officers are to be remunerated. The act provides that the license tax shall be assessed and collected as other taxes, and we are of opinion that the Legislature intended the officers to be paid in the same way and at the same rate at which they are remunerated for the collection of revenue taxes; that is, for the purpose of ascertaining the remuneration due the officers, the gross amount of the dog tax collected shall be added to the total amount of the revenue tax collected, and, upon the whole, the officers' remuneration shall be fixed by the terms of section 4148 of the Kentucky Statutes of 1903, 10 per cent. on the first $5,000, of the total, and 4 per cent. upon the residue, the

total amount of the remuneration of the officer not to exceed the sum of $5,000.

For these reasons the judgment is reversed, with directions to sustain the demurrer to the petition and for other procedure consistent herewith.

O'REAR, C. J. (dissenting).   While admitting the scope of the police power in the State to regulate the ownership and control of property within its borders so as to minimize the injuries that may be inflicted on others because of the predatory nature of the property, still I am unable to go so far as the majority opinion does in this case.   One man's property may need regulation for the public safety, but that is far from meaning that it may be taken from him and given to somebody else.   Admitting that the Legislature has the power to impose a tax upon dogs as a police regulation, the tax cannot be imposed, in my judgment, for the benefit of a few persons, or for any special class of persons, for the State is as powerless to take one citizen's property and confer it upon another, under the guise of police regulation, as it is under the tax regulation.   By whatever name you call the act, it is the same, if the inevitable result is the same.   It could not be maintained that a tax could be levied upon sheep, and the sum realized given over to those who raise horses alone, upon the idea that the horse-raising industry was of more benefit to the State than sheep husbandry.   Nor would the fact that the State could appropriate its general revenues to fairs at which horses alone were exhibited as a means of stimulating an enterprise that would be beneficial to the whole State affect the question in my opinion. Dogs are personal property.   Section 66, Ky. St. 1903: Commonwealth v. Hazelwood, 84 Ky. 681, 8 Ky. Law Rep. 586, 2 S. W. 489.   The State may regu-

late their ownership, as it may any other property; but I deny that it can regulate the ownership so as to confer the sole benefit directly and exclusively upon any other class of property. Nor can the fact that ·one class of property sometimes preys upon another class justify such legislation. Hogs are also a danger to other property. They may break into fields of corn and other grain and destroy them. Consequently the State may regulate the ownership of hogs by requiring them to be kept up by their owners, and may impose a liability on such owners for their depredations; but has the State the power to impose a license tax on hogs for the benefit of all who raise corn, or even of those engaged in raising corn who suffer damage by breachy hogs? The imposition of a tax upon a class of property is to that extent the taking of that much of the property taxed, whether the tax be for revenue or for police regulation. And whether one or the other it must be for the public. The exercise of every power of government is necessarily for the public. Hence private property cannot be taken by the government for any other than a public use. The exercise of the police power is as subject to this overruling principle of our government as is any other governmental power. When the Legislature exercises its power of police regulation of the ownership of dogs, as it may do, it must exercise it in behalf of the whole public, but has not the power to do so for the exclusive benefit of a special or favored class. If the principle be admitted that the only test of such legislation is whether it is within the police power to regulate the ownership of a particular species of property, no matter what may be done with the proceeds of the license fees collected by virtue of such statute, then it would be competent for the

Legislature to bestow that much of the citizens' property upon any object which the Legislature might choose. I think that all such legislation is subject to two tests: First, is the subject one which the State under the police power may regulate? second, if it is, is the regulation imposed for the benefit of the public; i. e., does the public receive the benefit? Not indirectly, but directly; for it may be assumed that the public is in a sense benefited by every industry carried on in the State, which adds to the sum of the wealth, or contributes to the happiness of any of its citizens. The State has not the power to tax one class of property and give the proceeds directly to owners of another class, upon the idea that the latter contribute more to the good of society. I submit that the State could not levy a tax or appropriate money out of the treasury (which is the same thing) for the benefit of unfortunate sheep owners who had lost their sheep by ravages of dogs or disease; nor for one any more than for the other. Nor does the State propose to do so in this legislation. It is attempting to compel all men who own dogs to pay to those who own sheep the loss sustained by the latter from some of the dogs of some of the former. It visits vicariously a penalty which some ought to bear, upon many nowise responsible for it, merely because it is difficult to say who ought rightfully to bear it. The real effect of the statute is to make all of one class of property holders pay the losses incurred in a private business by another class, because this loss has been occasioned by the property of some of the first class. I do not believe such legislation is a valid exercise of the police power. We all recognize that sheep husbandry is a business of great value to the State. It may be admitted that the ownership of

dogs is of doubtful value. The interests of the former as weighed against the latter may overwhelmingly preponderate from an economic standpoint. Notwithstanding all which, the principle of the law must be the same. It is unsafe to allow mere utilitarianism to bear down those safeguards of the citizen's rights —those checks imposed by the people in their Constitution against the power of the majority and in favor of the individual, that which gives, if anything gives, one man a right safe from the encroachment of all other men; that which recognizes the supreme right of individual taste and judgment in the matter of acquiring property and in the pursuit of happiness. The legislation here involved makes a breach, I fear, in the dike of the people's liberties—makes one class of people contribute to the business success of another class by the fiat of government without any direct benefit received by the former.

Hence I feel constrained to dissent from the opinion delivered by the court in this case.

NUNN and CARROLL, JJ., concur in this dissent.