### JOE LYNN V. THE STATE.
*No. 313.    Decided March 27.*

33  153
36  340
36  345

1. **Dogs as Property.**—Under the laws of Texas dogs are property, and the citizens' rights in ownership and enjoyment of such animals are protected in the same manner and to the same extent as in cases of other species of personal property. Following Hurley v. The State, 30 Texas Crim. App., 333.

2. **Constitutional Law—City Ordinance—Shooting Unmuzzled Dogs in Streets.**—Where a city ordinance made it "the duty of the city marshal and policemen to shoot all dogs not muzzled found in any street, alley, sidewalk, or other public highway within the city limits," *Held*, the ordinance was in contravention of the provisions of the Constitution and laws of the State, and therefore void.

1. It is violative of section 17 of the Bill of Rights, because it authorizes the citizen's property to be destroyed without adequate compensation.

2. It is violative of section 19 of the Bill of Rights, in depriving the citizen of his right of property without due process of law.

3. It is violative of articles 679 and 680 of the Penal Code, which make it a penal offense to willfully kill any animal.

4. It is in direct conflict with article 316 of the Penal Code, which makes it a penal offense to discharge firearms on or across any public street in a city or town.

3. **Same—Statutory Construction.**—While it is true that article 401 of the Revised Statutes authorizes cities and towns "to regulate or restrain the running at large of dogs, and to authorize their destruction when at large contrary to ordinances," still this police power can only be exercised in subordination to the Constitution and laws.

APPEAL from the County Court of Smith. Tried below before Hon. B. B. BEAIRD, County Judge.

Appellant was tried upon information, and convicted for unlawfully discharging a gun and a pistol on and across a public street in the city of Tyler, his punishment being assessed at a pecuniary fine of one cent.

The facts show, that on the 28th day of June, 1893, the appellant, in the city of Tyler, at about 3 o'clock a. m., on a vacant lot immedi-

ately west of the public square, shot an unmuzzled dog. After the first shot the dog ran into a public street, to wit, West Ferguson street, and fell, continuing to howl. The appellant went to it and, standing directly over it, shot it twice more, shooting down and killing it. The appellant at the time was a duly qualified and acting policeman in and for the city of Tyler, and shot the dog with a 22-caliber rifle, provided him by said city for the purpose of shooting dogs in the city limits running at large without being muzzled.

At and prior to the time of shooting the dog there was a city ordinance, passed regularly by the city council, properly signed by the mayor, requiring all persons who owned dogs running at large, or frequenting any public street, alley, sidewalk, etc., to keep such dogs securely muzzled, said muzzles to be made of wire; authorizing the city marshal and policemen to shoot all dogs unmuzzled and running at large on the public streets, alleys, etc., within said city. This ordinance was offered in evidence by the appellant, but the court, on objection by the prosecution, would not admit it, because in conflict with sections 17 and 19 of the Constitution, and also article 316 of the Penal Code.

*D. Y. Gaines,* and *Reaves, Walker & Reaves,* for appellant.—1. The city ordinance in this case being regularly enacted by the city council and properly approved by the mayor, was a valid ordinance, and hence should have been admitted in evidence to justify the act complained of. Sayles' Civ. Stats., art. 401, title 17, chap. 4; Cool. Const. Lim., 707, 740, 741, 749, and foot notes; Cool. on Torts, 346, 347, 348; Whitfield v. The City of Paris, 84 Texas, 431; Marshall v. The State, 13 Texas, 55; Ex Parte Cooper, 3 Texas Crim. App., 489; Tiedm. Lim. of Police Power, 509, et seq.

2. If it should be held that the ordinance in question authorizes the destruction of personal property, it will not render the ordinance void, because a city, by a proper exercise of its police powers, may destroy property without compensation, when necessary to the peace, safety, convenience, and welfare of the public. Ex Parte Cooper, 3 Texas Crim. App., 495; Cool. Const. Lim., 707; 1 Dill. on Mun. Corp., 166, 167.

3. All laws are to be regarded as valid and binding until they have been declared void by a court of last resort; and it is the duty of all citizens, and especially ministerial officers, to submit to and obey whatever is promulgated as law by the law-making authority, and should be entitled to protection under them. Otherwise a private citizen or ministerial officer may usurp the authority not only of a judge, but of a court of last resort, and it would be impossible to enforce any law. Sessums v. Botts, 34 Texas, 349; Donaldson v. The State, 15 Texas Crim. App., 28.

An unlawful or criminal purpose is an essential element of the offense charged in the case, and any fact tending to show the condition of the mind at the time is admissible in evidence. Bish. Crim. Law, sec. 288, et seq.; Lyle v. The State, 21 Texas Crim. App., 153.

*James M. Edwards*, County Attorney, and *R. L. Henry*, Assistant Attorney-General, for the State.—1. The city ordinance in question is ultra vires and void.

It is void because it constitutes a policeman accuser, court, and executioner, to summarily destroy property without due process of law. Const. 1876, art. 1, secs. 17, 19; Hurley v. The State, 30 Texas Crim. App., 333–337; Railway v. Holden, 3 Texas Civ. App., 323; Railway v. Hauks, 78 Texas, 300; Rev. Stats., art. 4681, sec. 21; Huntsman v. The State, 12 Texas Crim. App., 638, 639, et seq.; Grigsby v. Peak, 57 Texas, 142.

It is void, because the power to enact it was not conferred, either expressly or by necessary implication, by title 17 of the Revised Statutes, which constitutes the charter of the city of Tyler. It is contended that article 401 of the Revised Statutes (charter of the city) confers adequate power to enact the ordinance. Article 401 empowers the city "to regulate or restrain and prohibit the running at large of dogs, and to authorize their 'destruction' when at large contrary to ordinance," etc. There is nothing in this article which expressly or by implication empowers the city to authorize its policemen to "destroy" dogs without due process of law, in contravention of the Constitution, or to "destroy" dogs by shooting them on a public street, in contravention of article 316 of the Penal Code. The ordinance is also void, because it is in direct conflict with a penal statute of the State. Rev. Stats., art. 401; Angerhoffer v. The State, 15 Texas Crim. App., 613; Flood v. The State, 19 Texas Crim. App., 584; 1 Dill. Mun. Corp., sec. 319; Penal Code, art. 316.

Under the rule of strict construction, which, according to a well settled principle, must be applied in testing the validity of this ordinance, it is not perceived how the power to enact it could possibly be implied from the terms of the charter.

2. The ordinance, being wholly void, was not admissible on the question of intent, or for any purpose.

If when a policeman discharges a gun or pistol in a public street of a city in shooting a dog, he must be acquitted when it is shown that he acted not willfully or wantonly, but under a void ordinance, it seems that the void ordinance would be as effectual as a valid ordinance to destroy property, without due process of law and in a manner inhibited by a penal statute.

Again, the ordinance does not make it the duty of policemen to shoot dogs while the dogs are upon the public street.

A void statute or ordinance is of no force or effect whatever. It will not protect those who act under it, and "it is as if it had never been enacted." Cool. Const. Lim., 924; The State v. Tufly, 22 Pac. Rep., 1054.

We submit that appellant contends that he ought to be excused on account of ignorance of the law. Penal Code, arts. 14, 45, 46.

There is a case in 84 Texas relied upon by appellant, but we do not think that case touches the issue here. It only decides that a city is not liable for the negligent performance of duty by a policeman. That case is decided on demurrer. The validity of the city ordinance was not presented to the court.

DAVIDSON, JUDGE.—Appellant was convicted of violating the provisions of article 316 of the Penal Code, which provides: "If any person shall discharge any gun, pistol, or firearms of any description, on or across any public square, street, or alley in any city, town, or village in this State, he shall be fined in a sum of not exceeding $100." Appellant shot and killed a dog in a street in the city of Tyler. On the trial he offered an ordinance of said city, as follows: "Section 1. Be it ordained by the city council of the city of Tyler, that every person living in the city of Tyler, who owns or keeps any dog that runs at large, or frequents any street, alley, sidewalk, or other public highway, shall keep said dog securely muzzled, said muzzle to be made of wire. Sec. 2. It is hereby made the duty of the city marshal and policemen to shoot all dogs not muzzled found in any street, alley, sidewalk, or other public highway within the city limits."

Objections were urged to the admission of this ordinance, because it conflicts with the provisions of sections 17 and 19 of article 1 of the State Constitution, known as the "Bill of Rights," and because in contravention of article 316 of the Penal Code. The constitutional provisions referred to read as follows, to wit: "Sec. 17. No person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person. * * * Sec. 19. No citizen of this State shall be deprived of life, liberty, property, privileges, or immunities * * except by the due course of the law of the land." The city of Tyler, being incorporated thereunder, must look to the provisions of the general statutes for authority to enact ordinances, and both the statutes and ordinances must not be violative of the provisions of the Constitution. The ordinance in question was created under the provisions of article 401 of the Revised Statutes, which authorizes cities and towns "to tax, regulate, or restrain and prohibit the running at large of dogs, and to authorize their destruction when at large contrary to ordinances, and to impose penalties on owners or keepers thereof for violation of such ordinances." The exercise of police power by legis-

lative bodies may be had within reasonable limits when not violative of the organic law, and when exercised must have reference to the welfare, safety, and comfort of society. The exercise of this power finds its authority in the law of necessity, and lies at the basis of the sovereignty of the State. But however strong this necessity may be, it can in no event override constitutional guarantees or inhibitions. Potter Dwar. Stats., 444, 450, 458–462; Cool. Const. Lim., 719 (side page 577), also 713–715 (side pages 572–574); Tiedm. Lim., 1–9. Its origin and growth is to be found in, and is therefore subordinate to, that golden rule of all civilized society, "So exercise your own freedom as not to infringe the rights of others, or the public peace and safety." 2 Story on Const., sec. 1888. The extent of legislative authority in the exercise of this power has not been determined; and it may be doubted if it can be accurately defined further than that it must be kept within the lines indicated, and within the constitutional limitations imposed. Emphasizing this proposition, our Bill of Rights declares, that in order "to guard against transgressions of the high powers herein delegated, we declare that everything in this Bill of Rights is excepted out of the general powers of the government, and shall forever remain inviolate, and all laws contrary thereto or to the following provisions shall be void." Const., art. 1, sec. 29. If we comprehend the purport of this solemn declaration, it means that "no person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by consent of such person, * * * and that the citizen can not be deprived of his "life, liberty, property, privileges, or immunities * * * except by the due course of the law of the land." This police power can not be exercised in derogation of, but must be subordinate to, these restrictions. Whatever is defined to be or is "property" in this State is clearly within the protective limitations of the Constitution, and is therefore placed beyond the power of legislative action to destroy without "adequate compensation," unless by the consent of the owner.

We do not deem it necessary or proper to enter into a discussion of the much-vexed question as to the extent of legislative authority in the exercise of the power of reasonable police regulation. It is not demanded or even called for by the ordinance before us. That proper police regulations may be enacted, quarantine laws enforced, human beings sequestered to prevent spread of infectious diseases, dogs destroyed to prevent danger from hydrophobia, or that they may be prevented from running at large when necessary for the public welfare, and other reasonable regulations prescribed, is doubtless true. This is founded in the highest law of self-defense, which is but an application of that doctrine of necessity which is alike the bulwark of human liberty and stronghold of autocracy. It is often difficult to draw accurately the lines between the ending of one and the beginning of the

other.   This line is sought to be drawn by the constitutional guaranties vouchsafed the citizen by the provisions of our Bill of Rights. Where there is a doubt, the law should fail, and the Constitution prevail.   This proposition is founded in that higher law setting forth the rights reserved by the citizen to himself, as the creator of the organic law.   That towns, cities, or even the Legislature, have not the authority to authorize the wholesale destruction of property without due process of law, we think is not open to discussion in his State.   If that power exists in such legislative bodies as to one species of property, it would follow "as night the day" that it exists as to each and every character and kind of property.   The Constitution draws no line, nor does it discriminate in favor of or against any particular species of property.   If it be "property," it suffices, and the protection is guaranteed.   All "property" in Texas stands upon the same legal plane, be it real or personal, and is equally entitled to the protection vouchsafed by the Constitution.   Now, what is the status of the dog under the laws of this State when viewed in the light of his relation to the term "property?"   It might perhaps be more entertaining than useful to trace the history of judicial decision in regard to such status.   Suffice it to say, that at the date of the ordinance in question civil actions would lie for his recovery; were maintainable for his conversion; damages could be recovered for injuries done or imposed; punishment inflicted for his destruction; and for his theft parties could be convicted of felony, and rendered infamous by incarceration in the penitentiaries.   Recurring to legislative enactment we find: "If any person shall willfully kill, maim, wound, poison, or disfigure any horse, ass, mule, cattle, sheep, goat, swine, dog, or other domesticated animal,   * * *   with intent to injure the owner thereof, he shall be fined not less than ten nor more than two hundred dollars." Penal Code, art. 679.   "If any person shall willfully or wantonly kill, maim, wound, disfigure, poison, or cruelly or unmercifully beat and abuse any animal   * * *   included in the preceding article, he shall be fined not exceeding two hundred and fifty dollars."   Id., art. 680. It may be further noticed that article 733 of the Penal Code enacts, "that within the meaning of 'personal property' which may be the subject of theft, are included all domesticated animals   * * *   when they are proved to be of any specific value."   Under this statute the dog is "personal property," and the subject of theft.   For an able and exhaustive discussion of this statute, and one we deem unanswerable, see the opinion of Hon. John P. White, late presiding judge of the Court of Appeals, in the case of Hurley v. The State, 30 Texas Criminal Appeals, 333.   Under articles 572 and 575 of our Penal Code, homicide may even be justified in the protection of the possession of the dog by his owner, under the circumstances therein enumerated.   And finally, the Legislature has made the dog the subject of a direct ad valorem tax,

thereby placing it upon the same footing as all other taxable property. The owner is required under oath to list his dog for taxation as other property, real or personal; and we find the dog expressly enumerated as taxable property in the same statute with lands, money, merchandise, horses, cattle, sheep, goats, hogs. Rev. Stats., arts. 4680, 4681, 4702, 4710. If such legislation does not constitute the dog property in this State, it would be exceedingly difficult to conceive how it could be done, nor can it be perceived how such legislation could be construed so as to avoid this conclusion. In every statute cited in relation to property where animals are the subject of legislation, the dog is recognized as property as fully as all those animals which are now and have always been in this country recognized as property, in the highest and strictest sense of that term. The craven who would wantonly injure him is the subject of a fine; the thief who would steal him may be declared a felon, and rendered infamous in the eyes of the law and his fellow-citizens; human life may be taken justifiably in the defense of his possession; and he is made the subject of the taxable burdens of the government. If these positions are correct, it would certainly be violative of every principle of law, justice, and right to hold an ordinance valid which would authorize the policemen of cities to destroy such property without process of law. It is certainly not "due process of law" to constitute such policeman informer, witness, judge, and jury, as well as the officer who executes his own decrees. Property rights are not held by such slender cords in this State. Where property is authorized to be condemned, such condemnation must be done in accordance with the "due process of the law of the land."

Again, the ordinance is void for another reason. It is in direct conflict with the provisions of article 316 of the Penal Code, under which appellant stands indicted, as well as the other cited statutes. The authority to repeal general laws of this State is not conferred upon municipal corporations by the terms of article 401 of the Revised Statutes, either expressly or by necessary implication. The charter, being the organic law of such corporation, contains the only authority by virtue of which its ordinances can be created. Where doubt exists as to that power, it must be resolved adversely to the corporation. The presumption should not lightly be indulged that the Legislature by implication repeals, as respects municipalities, laws of a general nature in force throughout the State. Ex Parte Garza, 28 Texas Crim. App., 381; Flood v. The State, 19 Texas Crim. App., 584; Bohmy v. The State, 21 Texas Crim. App., 597; Ex Parte Sundstrom, 25 Texas Crim. App., 133. If it be admitted that authority is vested in the city of Tyler under article 401, supra, to destroy dogs "under its ordinances" without compensation and without the owners' consent, because found at large without wearing muzzles, it would still be incumbent on the city council to order such destruction in such man-

ner as not to violate the general laws of the State. Such admitted authority to destroy would not invest the city with power to order policemen to shoot in the streets, to the danger and terror of the people who throng such thoroughfares, nor would it empower the city to set at defiance those laws which guarantee the citizen the right to protect himself or his property from such reckless conduct. It certainly is not within contemplation of article 401 that such killing, if authorized, should be accomplished by shooting pistols and guns in the streets and thoroughfares of the city. That extreme cases may arise demanding immediate action is no argument against the position above assumed. We are simply discussing the ordinance in hand, and the authority of the city council to create it as created. That appropriate legislation may be enacted to protect society against danger, real or apparent, is not denied and can not be questioned; and this, too, whether the danger be from men, or animals, or epidemics—contagious or infectious diseases. Nor are we discussing the right of the citizen in his individual capacity to defend or protect himself from danger to his life, liberty, or property, from whatever source it may come. Only those questions raised by the State's objections and sustained by the court are discussed. They are well taken, and the evidence was properly rejected. The defendant failed to state in his bill of exceptions the object or purpose of offering this testimony. It is therefore not required of this court to supply by inference such omissions, and we are not called upon to discuss any suggestions raised by counsel as to his reasons for tendering same. Willson's Crim. Stats., secs. 2368, 2516.

The judgment is affirmed.

*Affirmed.*

Judges all present and concurring.