**Vincent P. LEIBOWITZ**

v.

**CITY OF MINEOLA, TEXAS, et al.**

Civil Action No. 6:08CV397.

United States District Court,
E.D. Texas,
Tyler Division.

Oct. 2, 2009.

Vincent Leibowitz (Pro Se), Mineola, TX, for Plaintiff.

Blake E. Armstrong of Birdsong & Armstrong, Tyler, TX, for Defendants.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

JUDITH K. GUTHRIE, United States Magistrate Judge.

The above-styled lawsuit was filed on October 9, 2008. The matter was transferred to the undersigned with the consent of the parties. Defendant filed a Motion for Summary Judgment (document # 31). The Court conducted a hearing on the motion for summary judgment on September 25, 2009. Plaintiff, proceeding *pro se*, and counsel for Defendants presented arguments at the hearing. For the reasons assigned below, the undersigned finds that the Motion for Summary Judgment should be granted.

*Background*

In his Amended Complaint filed on February 25, 2009, Plaintiff asserts that two sections of an Animal Control Ordinance enacted in Mineola, Texas, violate the 14th Amendment of the United States Constitution. The Animal Control Ordinance was adopted on January 22, 2007. The City of Mineola, Texas, is a Type A general law municipality. The named defendants are the City of Mineola, Texas, and Chuck Bittner, Chief of Police for the City of Mineola. Plaintiff seeks relief pursuant to 42 U.S.C. §§ 1983 and 1988. He requests an injunction to prohibit Defendants from enforcing the ordinance, a declaration that the ordinance violates the 14th Amendment and an award of his costs and attorney's fees.

The specific sections of the ordinance at issue identified by Plaintiff—Sections 5–36 and 5–39 of the Animal Control Ordinance—concern nuisance animals and the tethering of animals. As initially enacted in 2007, Section 5–36 stated:

**Section 5–36. Nuisance animals**

(a) As used in this article, a nuisance animal shall be defined as any animal which commits any of the acts listed herein:

(1) Molests or chases pedestrians, passersby or passing vehicles, including bicycles.

(2) Makes unprovoked attacks on other animals of any kind.

(3) Is repeatedly At Large; specifically; three or more times per 12–month period.

(4) Damages public or private property.

(5) Defecates on property not belonging to or under control of its owner.

(6) Barks, whines, howls, crackles, or makes any noises excessively and continuously, and such noise disturbs a person of ordinary sensibilities.

(7) Is unconfined when in heat.

(b) If the Animal Control Officer determines that any animal is a nuisance, the Animal Control Officer may issue an order requiring that the owner meet certain remedial requirements to correct the conduct of the animal. The order shall be given to the owner by personal service or by certified mail, return receipt requested. The

Animal Control Officer or a police officer investigating an animal nuisance complaint may issue a citation to the owner or person in control of said animal.

The portion concerning barking—Section 5-36(a)(6)—was subsequently amended on February 25, 2008 to state:

Barks, whines, howls or makes any noise excessively and for more than 10 consecutive minutes to the discomfort of people and quiet of the neighborhood, or which makes any unreasonably loud, disturbing and unnecessary noise which is offensive to the ordinary sensibilities of the inhabitants of the city and which noise renders the enjoyment of life or property uncomfortable or interferes with public peace and comfort.

As enacted in 2007, Section 5-39 stated:

**Section 5-39. Tethered animals**

It shall be unlawful for any person to tether, chain or fasten any animal in such a manner as to permit it to be upon any public sidewalk or street or to leave it unattended while tethered, chained or fastened on public property.

Section 5-39 was amended on January 28, 2008, such that the original text was deleted and replaced with the following:

**Section 5-39. Restraint requirements for dogs.**

(a) *General prohibition on tethering.* It is unlawful for a person to restrain a dog with a chain or tether unless the person is holding the chain or tether.

(b) *Affirmative defenses.* It is an affirmative defense to a violation of subsection (a) that the restraint:

(1) Is required to protect the safety or welfare of a person or the dog, if the dog's owner, or person who otherwise has control over the dog, remains with the dog throughout the period of restraint; or

(2) Occurs on the owner's premises and:

a. While the dog is within the owner's, or person who otherwise has control over the dog, direct physical control; and

b. while the dog is prevented from being within 15 feet from the edge of any public street or sidewalk.

(c) *Exceptions.* The prohibition of subsection (a) does not apply to a temporary restraint:

(1) During a lawful animal event, veterinary treatment, grooming, training, or law enforcement activity.

(d) *Restraint specifications.* The affirmative defenses provided in subsection (b) and exceptions in subsection (c) do not apply unless the restraint meets the following specifications:

(1) The chain, leash, cord, or tether is not placed directly around the dog's neck and is attached to a properly fitting collar or harness worn by the dog;

(2) The chain, leash, cord, or tether, by design and placement, is unlikely to become tangled; and

(3) The dog is restrained in a manner that permits access to necessary shelter and water.

(e) *Hand-held leashes.* This section does not prohibit a person from walking a dog with a hand-held leash.

(f) *Dogs running at large strictly prohibited.* Nothing in this section authorizes an owner to allow a dog to run at large or to fail to provide appropriate restraint or enclosure as required by section 5-33 of this chapter.

(g) Provisions of this Section 5-39 shall not become effective until April 30, 2008.

The ordinance amending Section 5–39 included a provision stating:

> That the terms and provisions of this ordinance shall be deemed to be severable and that if the validity of any section, subsection, sentence, clause, or phrase of this ordinance should be declared to be invalid, the same shall not affect the validity of any other section, subsection, sentence, clause, or phrase of this ordinance.

Plaintiff alleges that Section 5–39 (hereafter referred to as "the restraint ordinance") lacks any rational relationship to a legitimate government interest and, therefore, violates the Equal Protection Clause of the 14th Amendment. Further, Plaintiff asserts that both Section 5–36 (hereafter referred to as "the barking ordinance") and the restraint ordinance violate the 14th Amendment by prohibiting conduct that is constitutionally protected, by being unconstitutionally vague, by denying due process as a result of their failure to be rationally related to a legitimate government interest and by denying him equal protection under the law.

Defendants filed a Motion for Summary Judgment on April 28, 2009. Defendants assert that there is no evidence to support Plaintiff's claims. According to Defendants, Plaintiff has been issued citations for violations of the Animal Control Ordinance. Plaintiff pleaded "not guilty" and the cases are pending. Defendants assert that the Animal Control Ordinance is rationally related to a legitimate government interest; namely, the safety, welfare, and general enjoyment of both animals and citizens of the City of Mineola. Further, Defendants submit that the ordinance is not unconstitutionally vague because it sets forth the prohibited conduct with sufficient specificity that a person of ordinary intelligence could understand when a violation may occur. With regard to Plaintiff's assertion that the Ordinance violates the Equal Protection Clause, Defendants argue that the Ordinance applies to all citizens of Mineola and does not single out a specific individual or class of individuals. Moreover, Defendants submit that Plaintiff has not shown a due process violation because the Ordinance is rationally related to a legitimate government and is valid and Plaintiff has not shown a property interest that has been deprived due to the Ordinance. Defendants assert that Plaintiff has not identified any constitutionally protected conduct that is prohibited by the Ordinance. Finally, Defendant Chuck Bittner argues that he is entitled to the affirmative defense of qualified immunity.

Plaintiff filed a response on August 6, 2009.[1] Plaintiff argues that dogs are property. He further asserts that both the restraint ordinance and the barking ordinance lack a rational relationship to a legitimate government interest and that Defendants have not produced any evidence showing a relationship. Plaintiff submits that there is no difference in behavior or quality of life between tethered and non-tethered dogs and that the City did not have problems with tethered dogs prior to the adoption of the restraint ordinance. Plaintiff argues that he has a constitutionally protected right to protect his property, which includes his dogs, and that the restraint ordinance prevents him from protecting his dogs. Likewise, Plaintiff asserts that Section 5–36(a)(6) of the barking ordinance infringes upon his right to protect his property because dog barking as-

---

1. On May 12, 2009, the discovery deadline was extended and Plaintiff's deadline to file a response was extended to July 20, 2009. Plaintiff filed a response on July 20, 2009 that was stricken on July 28, 2009. Plaintiff was then given a deadline of August 7, 2009 to file a response in conformance with the Local Rules.

sists in protecting his home and family and he complains that this section does not include an affirmative defense.

In addition, Plaintiff states that the restraint ordinance is broad and over-reaching and is contrary to Texas law (specifically, Texas Health & Safety Code § 821.077). He contends that the barking ordinance is unconstitutionally vague because it is not clear what conduct is prohibited with regard to the phrases "any noise," "unnecessary noise" and "renders the enjoyment of life or property uncomfortable" and that its vagueness has led to inconsistent interpretations by police, Animal Control and a municipal judge. Similarly, he submits that the restraint ordinance is unconstitutionally vague because of the phrases "person who otherwise has control over the dog" and "remains with the dog throughout the period of restraint." According to Plaintiff, Section 5–36(a) of the barking ordinance deprives citizens of due process by "allowing the Animal Control Officer to pick and choose whether he will issue a 'remedial requirements' order or issue a Class C Misdemeanor citation, and limiting police officers only to the issuance of a citation." Plaintiff argues that Section 5–36(b) of the barking ordinance also deprives citizens of due process because there is no provision for appealing or seeking review of an Animal Control Officer's remedial order. With regard to his equal protection claim, Plaintiff argues that the barking ordinance violates the Equal Protection Clause because it is conceivable that individuals may be treated differently depending on which officer they encounter as a result of the allegedly vague and inconsistent features in the barking ordinance.

Finally, Plaintiff denies that Bittner is entitled to qualified immunity. Plaintiff questions Bittner's credibility. He asserts that Bittner contacted his step-mother and attempted to secure her agreement to let him "dispose of" Plaintiff's dogs and, on another occasion, pursued an allegedly fraudulent dog bite complaint. Further, Plaintiff submits that the Animal Control Ordinance was enacted as a result of the actions of a former city council member who resides next door to Plaintiff and that neighbor, Jack Jones, is frequently and regularly visited by Mineola police officers.

Defendants filed their reply brief on August 10, 2009. Defendants again assert that the Animal Control Ordinance, including both the barking ordinance and the restraint ordinance, is rationally related to the legitimate public purposes of protecting humans and animals and protecting the health, safety, welfare and enjoyment of life of the citizens of Mineola. Defendants deny that it is required to produce evidence showing that the tethering provision was enacted as a result of a specific incident or injury. Defendants further argue that the Animal Control Ordinance is not preempted by state law because Texas Health and Safety Code § 822.047 gives municipalities discretion to regulate dogs and allows municipalities to impose additional requirements or restrictions.

A sur-reply was filed by Plaintiff on the same date. Plaintiff reiterates his assertion that the portion of the Animal Control Ordinance concerning barking is arbitrarily enforced because it is vague. With regard to Defendants' assertion that the Animal Control Ordinance is not preempted by state law, Plaintiff argues that § 822.047 is not applicable to § 821.077 of the Texas Health and Safety Code.

*Summary Judgment Standard*

Rule 56(c) of the FED.R.CIV.P. provides that the Court may only grant a motion for summary judgment when there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. The party seek-

ing summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The moving party, however, "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case. *Stults v. Conoco, Inc.,* 76 F.3d 651, 655 (5th Cir.1996). Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. *Id.* Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden. *Id.*

Summary judgment is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions. *Honore v. Douglas,* 833 F.2d 565 (5th Cir.1987). The district court must look to the full record, including the pleadings, affidavits, and depositions. *Williams v. Adams,* 836 F.2d 958, 961 (5th Cir.1988). Under this standard, fact questions are considered with deference to the nonmovant. *Reid v. State Farm Mutual Automobile Insurance Co.,* 784 F.2d 577, 578 (5th Cir.1986). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). The Court resolves factual controversies for purposes of summary judgment in favor of the non-

moving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *Little v. Liquid Air Corp.,* 37 F.3d at 1075. The Court does not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. *Wallace v. Texas Tech University,* 80 F.3d 1042, 1048 (5th Cir.1996) (citing *Little v. Liquid Air Corp.,* 37 F.3d at 1075).

"The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 247–248, 106 S.Ct. 2505. An issue is "genuine" if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inference in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of the party. *St. Amant v. Benoit,* 806 F.2d 1294, 1297 (5th Cir.1987). A "material fact" is one that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (footnote omitted).

*Discussion and Analysis*

Plaintiff alleges that the barking ordinance and the restraint ordinance found in Mineola's Animal Control Ordinance are

unconstitutional. Defendants filed a Motion for Summary Judgment asserting that the Animal Control Ordinance does not violate the 14th Amendment and that Bittner is entitled to qualified immunity.

■ Federal courts have only the power authorized them by Congress pursuant to Article III of the Constitution. *Bender v. Williamsport Area School District,* 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986); *Chair King, Inc. v. Houston Cellular Corp.,* 131 F.3d 507, 509 (5th Cir.1997). "Under our federal constitutional scheme, the state courts are assumed to be equally capable of deciding state and federal issues." *Marathon Oil Co. v. Ruhrgas,* 145 F.3d 211 (5th Cir.1998) (overruled on other grounds, *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999)). If Congress has not conferred jurisdiction upon the federal courts, the state courts become the sole vehicle for obtaining initial review of some claims. *Id.* (citing *Victory Carriers, Inc. v. Law,* 404 U.S. 202, 212, 92 S.Ct. 418, 425, 30 L.Ed.2d 383 (1971)). In this case, Plaintiff seeks relief pursuant to a federal statute—42 U.S.C. § 1983.

**Substantive Due Process**

Section 1983 states that every person who acts under color of state law to deprive another of constitutional rights shall be liable to the injured party. In other words, to seek relief pursuant to § 1983, Plaintiff must assert claims of constitutional magnitude. He must show that he has been deprived of a constitutional right.

■ Construing Plaintiff's *pro se* pleadings liberally, the Court interprets Plaintiff's assertion that the ordinances lack a rational relationship to a legitimate government interest as a claim that the ordinances violate his constitutional right to substantive due process. All rights guaranteed by the 14th Amendment, including

substantive due process, are protected by § 1983. *Findeisen v. N.E. Indep. Sch. Dist.,* 749 F.2d 234, 237 (5th Cir.1984).

Pursuant to the 14th Amendment of the United States Constitution, no "State shall deprive any person of life, liberty, or property, without due process of law . . ." U.S. CONST. Amend. XIV. Substantive due process protects individuals from arbitrary and unreasonable government action that deprives any person of life, liberty or property. When asserting a substantive due process violation in a § 1983 case, a plaintiff must "first identify a life, liberty, or property interest protected by the Fourteenth Amendment and then identify a state action that resulted in a deprivation of that interest." *Blackburn v. City of Marshall,* 42 F.3d 925, 935 (5th Cir.1995). Establishing a violation of substantive due process requires a showing that the government has deprived an individual of his liberty or property; stated differently, a violation occurs only when the government "works a deprivation" of a "constitutionally protected interest." *Regents of University of Michigan v. Ewing,* 474 U.S. 214, 223, 106 S.Ct. 507, 512, 88 L.Ed.2d 523 (1985); *see also Simi Inv. Co. v. Harris County, Texas,* 236 F.3d 240, 249 (5th Cir. 2000) (*citing Brennan v. Stewart,* 834 F.2d 1248, 1257 (5th Cir.1988)).

■ Prevailing on a substantive due process claim requires a plaintiff to first establish a constitutionally protected property right to which the 14th Amendment's due process protection applies. *Simi Inv. Co. v. Harris County, Texas,* 236 F.3d at 249–50. Plaintiff asserts that his dogs are a constitutionally protected property interest. Most states have recognized dogs as property. *See Sentell v. New Orleans & C.R. Co.,* 166 U.S. 698, 700, 17 S.Ct. 693, 41 L.Ed. 1169 (1897). Dogs have also been recognized as property in Texas. *Lynn v.*

*State,* 33 Tex.Crim. 153, 25 S.W. 779 (Tex. Crim.App.1894). At the summary judgment hearing, Defendants did not dispute that dogs are property.

■ The next issue in a substantive due process evaluation is whether a rational relationship exists between the ordinance at issue and a conceivable legitimate objective. *Simi Inv. Co. v. Harris County, Texas,* 236 F.3d at 250–51. "If the question is at least debatable, there is no substantive due process violation." *Id.* (*citing FM Props. Operating Co. v. City of Austin,* 93 F.3d 167, 175 (5th Cir.1996)). Ordinances, including those regulating the ownership, possession and control of dogs, are a proper exercise of a municipality's police power if they are designed to secure the safety, health and welfare of the public. *Vargas v. City of San Antonio,* 650 S.W.2d 177, 178 (Tex.App.-San Antonio, 1983, writ dism'd w.o.j.); *Hargrove v. City of Rotan,* 553 S.W.2d 246, 247 (Tex.Civ. App.-Eastland 1977, no writ) (*citing Whitfield v. City of Paris,* 84 Tex. 431, 19 S.W. 566 (1892)).

Defendants assert that the Animal Control Ordinance in its entirety, including the barking ordinance and restraint ordinance, is rationally related to a legitimate government interest in the safety, welfare and general enjoyment of both animals and citizens of the City of Mineola. The stated purpose of the Animal Control Ordinance when it was originally enacted in 2007 stated:[2]

It is the intent and purpose of this chapter to provide a safe and healthy environment within the City for both animals and people.

A deferential "rational basis" test governs the substantive due process analysis. *Energy Management Corp. v. City of Shreveport,* 467 F.3d 471, 481 (5th Cir.2006).

Given the low threshold requirement that a policy, or in this case an ordinance, only has to have a conceivable legitimate objective, the Court finds that it is "at least debatable" that a rational basis exists to justify the alleged interference with Plaintiff's property rights. *See Simi Investment Company, Inc. v. Harris County, Texas,* 236 F.3d at 250–51. As a result, Defendants are entitled to judgment as a matter of law on Plaintiff's substantive due process claim.

**Procedural Due Process**

■ Plaintiff also asserts that the barking ordinance violates his constitutional right to procedural due process. He complains that there are no affirmative defenses listed in the ordinance. He further complains that Animal Control Officer can choose between issuing a "remedial requirements order" or a Class C misdemeanor citation, while police officers are limited to issuing a citation. Finally, he submits that the ordinance does not provide for appeal or review of "remedial requirements orders."

■ Claims of procedural due process violations are not cognizable in federal court if adequate post-deprivation state tort remedies exist. *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (*overruled on other grounds in Daniels v. Williams,* 474 U.S. 327, 330, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986)). To succeed on a procedural due process claim, a plaintiff must show that the process provided by the City was inadequate and did not secure his property interest. *See Wilkinson v. Austin,* 545 U.S. 209, 125 S.Ct. 2384, 2395–96, 162 L.Ed.2d 174 (2005). Negligent and intentional deprivations of property do not violate the Due Process Clause if adequate and meaningful post-

---

**2.** *See* Section 5–20 of Ordinance No. 07–01– 22A.

deprivation remedies are available. *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 3204, 82 L.Ed.2d 393 (1984). The City's action is not deemed "complete until and unless it provides or refuses to provide a suitable post-deprivation remedy." *Id.*

 Stating a viable procedural due process claim requires that Plaintiff show of a deprivation of property without adequate and meaningful post-deprivation remedies. Procedural due process does not require every statute or ordinance to include affirmative defenses. In addition, Plaintiff's complaint concerning an Animal Control Officer's ability to issue a "remedial requirements order" involve a deprivation of property. The barking ordinance states that an Animal Control Officer who determines that an animal is a nuisance may "issue an order requiring that the owner meet certain remedial requirements to correct the conduct of the animal." Alternatively, either an Animal Control Officer or a police office may issue a citation. At the summary judgment hearing, Defendants compared the described order for an owner to "meet certain remedial requirements" as a warning. The ordinance covers several types of animal conduct that is deemed a nuisance—molesting or chasing pedestrians, making unprovoked attacks, being repeatedly at large, defecating on neighboring property, making excessive and continuous noises and being unconfined when in heat. A logical reading of the ordinance reveals that the language concerning an order for "remedial requirements" provides an Animal Control Officer with the authority to direct an animal owner to "correct the conduct of the animal." In the case of a barking dog, for example, the Animal Control Officer may direct the owner to quiet the dog. A directive to correct the animal's conduct does not result in the deprivation of a property interest. As a result, Plaintiff has not stated a viable claim for the violation of his constitutional right to procedural due process.

## Equal Protection

 Plaintiff asserts that the barking ordinance violates the Equal Protection Clause of the 14th Amendment because it is conceivable that individuals could be treated differently depending on a responding officer's interpretation of the ordinance. The 14th Amendment provides that States may not "deny to any person within its jurisdiction the equal protection of the laws." In other words, all persons similarly situated should be treated alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). In general, legislation is presumed to be valid and will be upheld if the challenged classification drawn by the statute is "rationally related to a legitimate state interest." *Id.* at 440, 105 S.Ct. 3249. An equal protection inquiry is only necessary when the challenged government action classifies or distinguishes between two or more relevant groups. *See Qutb v. Strauss*, 11 F.3d 488, 492 (5th Cir.1993). "[E]qual protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *F.C.C. v. Beach Communications Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993).

In this case, the challenged barking ordinance does not distinguish between classes of individuals or groups. It also does not have a disparate impact on members of a suspect class. The barking ordinance applies to all classes of citizens. Plaintiff's allegation that the barking ordinance may be enforced differently by different officers is akin to his assertion that the ordinance is vague. That issue is addressed below. Plaintiff has not produced evidence showing that similarly situated persons received more favorable treatment

by Defendants. *See Rolf v. City of San Antonio,* 77 F.3d 823, 828 (5th Cir.1996) ("We may conduct an equal protection inquiry only if the challenged government action classifies or distinguishes between two or more relevant groups."). Plaintiff has not met his burden of showing a question of material fact as to whether the challenged barking ordinance violates the Equal Protection Clause of the 14th Amendment and Defendants are entitled to judgment on this issue.

**Vagueness**

▮ The void-for-vagueness doctrine is a due process principle that is primarily employed to attack criminal laws.[3] *Groome Resources, Ltd. v. Parish of Jefferson,* 234 F.3d 192, 217 (5th Cir. 2000). "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). A statute or ordinance is unconstitutionally vague when its terms are so indefinite that "men of common intelligence must necessarily guess at its meaning and differ as to its application." *Reeves v. McConn,* 631 F.2d 377, 383 (5th Cir.1980) (*citing Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926)). Stated differently, "[a] statute is unconstitutionally vague if it does not give 'a person of ordinary intelligence a reasonable opportunity to know what is prohibited.'" *Groome Resources, Ltd. v. Parish of Jefferson,* 234 F.3d 192, 217 (5th Cir.2000) (*quoting United States v. Bird,* 124 F.3d 667, 683 (5th Cir.1997)); *see also Bouie v. City of Columbia,* 378 U.S. 347, 350, 84 S.Ct. 1697, 1701, 12 L.Ed.2d 894 (1964). Mathematical certainty or precision is not

required. *See Fernandes v. Limmer,* 663 F.2d 619, 636 (5th Cir.1981).

▮ Succeeding on a vagueness claim requires more than showing that an enactment requires a person to conform his conduct to an imprecise standard. Instead, a plaintiff must show a complete absence of a standard of conduct. *Coates v. City of Cincinnati,* 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971). Greater scrutiny is applied and more language clarity is required when an enactment interferes with or inhibits a constitutionally protected right. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 499, 102 S.Ct. 1186, 1193–94, 71 L.Ed.2d 362 (1982) (*rehearing denied,* 456 U.S. 950, 102 S.Ct. 2023, 72 L.Ed.2d 476); *Grayned v. City of Rockford,* 408 U.S. at 109, 92 S.Ct. at 2298. A facial challenge to an enactment that does not implicate constitutionally protected conduct fails unless the enactment is "impermissibly vague in all of its applications." *Id.* at 495, 102 S.Ct. 1186. Moreover, "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Id.* In this case, neither the barking ordinance nor the restraint ordinance inhibit the exercise of a constitutionally protect right or implicate Plaintiff's fundamental liberties. They are reviewed to determine whether they can apply under any set of circumstances. *Id.* at 495–97, 102 S.Ct. 1186.

▮ With regard to the barking ordinance, Plaintiff complains that the phrases "any noise," "unnecessary noise" and "renders the enjoyment of life or property uncomfortable" are vague. Words that

---

**3.** The Animal Control Ordinance references "Criminal Penalty" and states that "[a]n offense under this Chapter is a Class C misdemeanor." *See* Section 5–97 of the Animal Control Ordinance, Ordinance No. 07–01–22A.

are not defined in an enactment should be given their ordinary meaning, such as the meaning found in a dictionary. *See, e.g., Id.* at 500–01, 102 S.Ct. 1186. "Noise," for example, encompasses loud, unpleasant sounds.[4] "Unnecessary" refers to something that is not necessary or is useless.[5] "Uncomfortable" includes the feelings of annoyance and uneasiness.[6] These are terms that are understandable to a reasonable person of ordinary intelligence. Moreover, the amended portion of the ordinance concerning barking—Section 5-36(a)(6)—more clearly describes the prohibited conduct as an animal that:

> Barks, whines, howls or makes any noise excessively and for more than 10 consecutive minutes to the discomfort of people and quiet of the neighborhood, or which makes any unreasonably loud, disturbing and unnecessary noise which is offensive to the ordinary sensibilities of the inhabitants of the city and which noise renders the enjoyment of life or property uncomfortable or interferes with public peace and comfort.

Plaintiff has not shown a complete absence of a standard of conduct. *See Coates v. City of Cincinnati,* 402 U.S. at 614, 91 S.Ct. at 1688. The Court therefore finds that the barking ordinance provides fair warning concerning what conduct is prohibited.

Plaintiff similarly complains that the phrases "person who otherwise has control over the dog" and "remains with the dog throughout the period of restraint," found in the restraint ordinance, are vague. As with the barking ordinance, these are common terms that are understandable to a person of ordinary intelligence; especially when read in the context of the entire ordinance. The amended restraint ordinance includes a general prohibition against restraining a dog "with a chain or tether unless the person is holding the chain or tether." The language objected to by Plaintiff is found in an affirmative defense for tethering. The ordinance provides an affirmative defense for violating the restraint ordinance when tethering is "required to protect the safety or welfare of a person or the dog." The language that Plaintiff asserts is unconstitutionally vague is not language describing the prohibited conduct. It is language describing an affirmative defense to the prohibited conduct. A person of ordinary intelligence would have a reasonable opportunity to know what conduct is prohibited in the restraint ordinance. There are no genuine issues of material fact on this issue and Defendants are entitled to judgment as a matter of law.

**Ordinance Compatibility With State Law**

■ Plaintiff additionally asserts that the restraint ordinance conflicts with Texas law—specifically, Texas Health & Safety Code § 821.077. This claim does not raise a constitutional issue. As such, it does not state a claim pursuant to 42 U.S.C. § 1983. Plaintiff is proceeding *pro se,* however, and the issue will be considered out of an abundance of caution to the extent that the pleadings may be construed to assert a pendent state law claim. Pursuant to § 821.077:

> (a) An owner may not leave a dog outside and unattended by use of a restraint that unreasonably limits the dog's movement:
>
> (1) between the hours of 10 p.m. and 6 a.m.;

---

4. *Webster's New International Dictionary* (3rd ed.2002).

5. *Id.*

6. *Id.*

(2) within 500 feet of the premises of a school; or

(3) in the case of extreme weather conditions, including conditions in which:

(A) the actual or effective outdoor temperature is below 32 degrees Fahrenheit;

(B) a heat advisory has been issued by a local or state authority or jurisdiction; or

(C) a hurricane, tropical storm, or tornado warning has been issued for the jurisdiction by the National Weather Service.

(b) In this section, a restraint unreasonably limits a dog's movement if the restraint:

(1) uses a collar that is pinch-type, prong-type, or choke-type or that is not properly fitted to the dog;

(2) is a length shorter than the greater of:

(A) five times the length of the dog, as measured from the tip of the dog's nose to the base of the dog's tail; or

(B) 10 feet;

(3) is in an unsafe condition; or

(4) causes injury to the dog.

Exceptions are listed in § 821.078.

■ Under Texas law, an ordinance is unenforceable only to the extent that it conflicts with state law. *See Dallas Merchant's & Concessionaire's Assoc. v. City of Dallas,* 852 S.W.2d 489, 491 (Tex.1993); *City of Brookside Village v. Comeau,* 633 S.W.2d 790, 796 (Tex.1982). An ordinance that is not in conflict with state law is not void. *See City of Weslaco v. Melton,* 158 Tex. 61, 308 S.W.2d 18 (1957). "[A] general law and a city ordinance will not be held repugnant to each other if any other reasonable construction leaving both in effect can be reached." *City of Beaumont v. Fall,* 116 Tex. 314, 291 S.W. 202, 206 (1927).

■ The fact that there is a state law on the subject matter does not mean that the subject matter is completely preempted. *City of Richardson v. Responsible Dog Owners of Texas,* 794 S.W.2d 17, 19 (Tex.1990). In this case, the restraint ordinance is more restrictive than the statute on the issue of dog restraints, but it is not inconsistent with it. A reasonable construction of both the statute and the ordinance allows both to be given effect. Compliance with the ordinance does not result in conduct that is prohibited by the statute. Likewise, the statute does not provide a person with rights that are infringed upon by the ordinance. The burden is on Plaintiff, as the party attacking the ordinance, to show that it is invalid. *Bidelspach v. State,* 840 S.W.2d 516, 517 (Tex.App.-Dallas 1992). Plaintiff has not identified, and the Court does not ascertain, a section of the ordinance that is inconsistent with and in conflict with the statute. Plaintiff has not stated a claim pursuant to § 1983 and has not presented a viable state law claim.

**Qualified Immunity**

■ Bittner asserts that he is entitled to qualified immunity. Qualified immunity is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Qualified immunity is intended to shield government officials from liability for monetary damages for acts in the performance of discretionary functions that were objectively reasonable in light of clearly established law. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396

(1982); *Thompson v. Upshur County*, 245 F.3d 447, 456 (5th Cir.2001). Qualified immunity is only available to an official acting within the scope of his discretionary authority. *Atteberry v. Nocona General Hosp.*, 430 F.3d 245, 257 (5th Cir.2005).

Traditionally, the qualified immunity analysis has required a two-tier determination as to whether the plaintiff sufficiently alleged a violation of a clearly established constitutional right and, if so, whether the defendant's conduct was objectively reasonable in light of law clearly established at the time of the events giving rise to the suit. *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir.1996). The first step was to determine whether the plaintiff's constitutional rights were violated. *Estep v. Dallas County, Texas*, 310 F.3d 353, 363 (5th Cir.2002) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). "If the facts viewed in the light most favorable to the plaintiff do not show a constitutional violation, the officer is entitled to qualified immunity." *Id.* Next, the court was required to consider whether the right was clearly established at the time of the alleged violation. *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). If it was determined that there was a violation of a clearly established constitutional right, the final inquiry was whether the official's conduct was objectively reasonable. *Kipps v. Caillier*, 197 F.3d 765, 768 (5th Cir.1999), *cert. denied*, 531 U.S. 816, 121 S.Ct. 52, 148 L.Ed.2d 21 (2000). Qualified immunity is defeated if an official, "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitution rights or other injury ..." *Harlow v. Fitzgerald*, 457 U.S. at 815, 102 S.Ct. 2727 (quoting *Wood v. Strick-land*, 420 U.S. 308, 322, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975)).

Most recently, the Supreme Court reconsidered its decision in *Saucier v. Katz* and held that this sequential two-step analysis is no longer mandatory. *Pearson v. Callahan*, —— U.S. ——, 129 S.Ct. 808, 821, 172 L.Ed.2d 565 (2009). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Id.* at 818. Even so, the Court recognized that the *Saucier* protocol is "often beneficial." *Id.* Allowing courts flexibility in the analysis is intended to avoid the unnecessary litigation of constitutional issues that do not effect the outcome of the case and drain the resources of the judiciary and the parties. *Id.*

In this case, the Court finds that it is beneficial to first consider whether Plaintiff has alleged facts showing the violation of a constitutional right by Bittner, as required by the first step of the *Saucier* two-step analysis. *Estep v. Dallas County, Texas*, 310 F.3d at 363 (citing *Saucier v. Katz*, 533 U.S. at 201, 121 S.Ct. 2151). Plaintiff's claim against Bittner is not clear in the First Amended Complaint. At the summary judgment hearing, Plaintiff was asked about his claim against Bittner. Plaintiff explained that he is suing Bittner because he is the supervisor of the City's police officers and he allowed his officers to enforce an unconstitutional ordinance. Bittner did not personally issue citations to Plaintiff, although Plaintiff stated that Bittner was on his property one of the times that he received a citation or warning for violating the restraint ordinance. Bittner also allegedly contacted Plaintiff's step-mother and asked her to sign Plaintiff's dogs over to him so that the dogs

could be destroyed. Plaintiff's step-mother declined and no action was taken.

■ To successfully plead a cause of action in a civil rights case, a plaintiff must enunciate a set of facts that illustrate a defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir.1986). Primarily, Plaintiff's claim against Bittner is grounded in the fact that Bittner is a supervisory official. Under 42 U.S.C. § 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory. A supervisor may only be held liable if either of the following exists: (1) he is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303–304 (5th Cir.1987). Plaintiff has not alleged facts showing that Bittner was personally involved in a constitutional deprivation. In addition, he has not shown a causal connection between any of his conduct and an alleged constitutional violation. Moreover, the allegation that Bittner asked Plaintiff's step-mother to "sign over the dogs" does not state a claim of constitutional magnitude. Bittner is entitled to qualified immunity and the claim against Bittner should, therefore, be dismissed.

The Court is sensitive to Plaintiff's expressions of care and concern for his dogs. In this matter, the federal court is limited to determining whether Plaintiff has shown constitutional violations sufficient to proceed with a claim pursuant to 42 U.S.C. § 1983. Based upon the foregoing discussion and analysis, the Court finds that there are no genuine issues of material fact with regard to the alleged constitutional violations and Defendants are entitled to judgment as a matter of law. It is therefore

**ORDERED** that Defendant's Motion for Summary Judgment (document # 31) is **GRANTED.** The complaint is hereby **DISMISSED** with prejudice. Any motion not previously ruled on is **DENIED.**